DIANNE NELSON
PAMELA WILBUR by POA
ED RICHARDSON, by POA
STEPHEN SCHOENSTEN, by POA
RONALD WRIGHT, by POA
SKYLER WILLIAMS by POA
519 Austin Street
Truth or Consequences, New Mexico 87901
Current Message Phone: (916) 978-5848

Plaintiffs In Propria Persona

FILED
U.S. DISTRICT COURT
DISTRICT OF NEW MEXICO

2009 MAY 13 PM 4: 11

CLERK-LAS CRUCES

CIV 0 9 - 4 7 7 RB/KBM

IN THE UNITED STATES DISTRICT COURT

IN THE STATE OF NEW MEXICO

| | |
|---|---|
| DIANNE NELSON, et al. (see attached) | **CASE NO.** |
| Plaintiffs, | **CIVIL RIGHTS - *42 U.S.C. §1983; AD*** **[PUBLIC INTEREST]** |
| vs. | |
| UNITED STATES OF AMERICA, et al. (see attached), Defendants. / | **CONTROVERSY EXCEEDS $75,000** **DEMAND FOR JURY TRIAL** **"COMPLEX" CASE** |

**COMPLAINT FOR VIOLATION OF CIVIL RIGHTS (42 UNITED STATES CODE §1983 – FEDERAL QUESTION AND DIVERSITY) FOR: VIOLATION/DEPRIVATION OF CONSTITUTIONAL AND OTHER STATE AND FEDERAL ENACTMENTS AND LAWS; ABUSE OF GOVERNMENT POWERS; ABUSE OF JUDICIAL, EXECUTIVE AND/OR ADMINISTRATIVE PROCESSES; JUDICIAL MISCONDUCT; LEGAL MALPRACTICE; OBSTRUCTION OF JUSTICE; RETALIATORY HARASSMENT FOR WHISTLE-BLOWING; NEGLECT OF DUTY; VIOLATION OF SUBSTANTIVE DUE PROCESS; VIOLATION OF ADA; SUPPRESSION OF EVIDENCE; CONSPIRACY TO COVER UP ILLEGAL ACTIVITY; DESTRUCTION OF GOVERNMENT AND COURT DOCUMENTS; TAMPERING WITH WITNESSES AND JURY; DEPRIVATION OF EQUAL ACCESS, TREATMENT AND PROTECTION; ELDER ABUSE; ANIMAL ABUSE; TAKING ADVANTAGE OF THE DISABLED, INDIGENT AND ELDERLY; BREACH OF FIDUCIARY DUTY; RACKETEERING (RICO) ACT VIOLATIONS; TAX FRAUD; VIOLATION OF TAX CODES; CONSPIRACY TO DEFRAUD OUT OF MONEY AND/OR PROPERTY WITH TAX SCAM; FEDERAL TORTS; DEPRIVATION OF CIVIL RIGHTS; CONSPIRACY TO DEPRIVE OF CIVIL RIGHTS;TAMPERING WITH U.S. MAIL; REAL PROPERTY TORTS/TORTS TO LAND; BREACH OF MANDATORY DUTY/FAILURE TO PERFORM; ENTITY/SUPERVISORY FAILURE TO TRAIN AND SUPERVISE PERSONNEL; DISCRIMINATION; CONSPIRACY TO COMMIT FRAUD AND EMBEZZLE REAL AND PERSONAL PROPERTY; ABUSE OF AGENCY POWERS; OTHER CONSPIRACY; BREACH OF CONTRACT; TORTS-OTHER; FORCIBLE ENTRY AND DETAINER; IMPROPER EJECTMENT WITOUT ADEQUATE DUE PROCESS; HARASSMENT, BREAKING, ENTERING, TRESPASS, VANDALISM; FRAUD/MISREPRESENTATION; STALKING; NEGLIGENCE; ABUSE OF PROCESS; DEPRIVATION OF PROTECTED PROPERTY RIGHTS; BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING; UNLAWFUL DETENTION UNDER FRAUDULENT PRETENSES; CONVERSION AND ILLEGAL WITHHOLDING WITHOUTA DEQUATE DUE PROCESS; INTERFERING WITH NEGOTIABLE INSTRUMENT; NUISANCE; SLANDER/LIBEL/DEFAMATION OF CHARACTER; INTENTIONAL/NEGLIGENT INFLICTION OF PHYSICAL, EMOTIONAL AND MENTAL DISTRESS; PRIVACY RIGHTS ABUSES/TRESPASS; INTERFERENCE WITH INTERSTATE COMMERCE; PERSONAL INJURY; DAMAGES/RESTITUTION; QUIET TITLE; INJUNCTIVE, DECLARATORY AND OTHER EQUITABLE RELIEF (FORECLOSURE & OTHER); ATTORNEYS FEES/COST OF SUIT** ***(U.S.CONSTITUTION; BILL OF RIGHTS; 42 U.S.C.§1981 et seq. and many other federal codes & enactments including "Racketeering [RICO] Sections; American With Disabilities Act; extremely lengthy list of Alaska &Calif. Codes and Rules of Court; Alaska and California State Constitutions***

DIANNE NELSON individually, and on behalf of: J. EDMOND BERTHELOT, JR., DECEASED by assignment and powers granted under that certain notarized Deed of Trust Dated March 2, 2007 and recorded in Homer Recording District 309, Homer, Alaska in Document 2007-004554-0; and on behalf of the following parties by assignment under Powers of Attorney: RONALD W. WRIGHT (April 3, 2009); PAMELA WILBUR (July 2, 2008); ED RICHARDSON (May 11, 2009); SKYLER WILLIAMS (April , 2009; and STEPHEN SCHOENSTEIN,

Plaintiffs,

vs.

UNITED STATES OF AMERICA, UNITED STATES ATTORNEY GENERAL; FEDERAL BUREAU OF INVESTIGATION; UNITED STATES 9TH CIRCUIT APPELLATE COURT; UNITED STATES DISTRICT COURTS (ALASKA & CALIFORNIA); STATE OF ALASKA; ALASKA DEPARTMENT OF PUBLIC SAFETY; STATE OF CALIFORNIA; ALASKA ATTORNEY GENERAL; STATE OF CALIFORNIA, OFFICES OF PUBLIC DEFENDER; CALIFORNIA ATTORNEY GENERAL; CALIFORNIA THIRD DISTRICT COURT OF APPEALS; STATE OF ALASKA, SUPERIOR COURT-KENAI; STATE OF ALASKA, DISTRICT COURT-HOMER; STATE OF CALIFORNIA, SUPERIOR COURTS, PLACER, SACRAMENTO, RIVERSIDE and VICTORVILLE; CALIFORNIA MOBILEHOME OMBUDSMEN; PLACER COUNTY DISTRICT ATTORNEY; RIVERSIDE COUNTY DISTRICT ATTORNEY; VICTORVILLE DISTRICT ATTORNEY; ALASKA STATE TROOPERS; ALASKA COMMISSION ON JUDICIAL CONDUCT; CALIFORNIA FRANCHISE TAX BOARD; CALIFORNIA HIGHWAY PATROL; STATE OF CALIFORNIA, COUNTIES OF PLACER and RIVERSIDE; OFFICE OF PLACER COUNTY COUNSEL; PLACER COUNTY RISK MANAGEMENT; PLACER COUNTY SHERIFFS DPARTMENT; PLACER COUNTY ADULT PROTECTIVE SERVICES; PLACER COUNTY TAX ASSESSOR; PLACER COUNTY BUILDING DEPARTMENT; PLACER COUNTY ENVIRONMENTAL HEALTH; PLACER COUNTY CODE ENFORCEMENT DEPARTMENT; PLACER COUNTY ANIMAL CONTROL; PLACER COUNTY PUBLIC WORKS; PLACER COUNTY COMMUNITY DEVELOPMENT DEPARTMENT; PLACER COUNTY BOARD OF SUPERVISORS; PLACER COUNTY ASSESSOR; PLACER COUNTY GRAND JURY; ROSEVILLE POLICE DEPARTMENT; CHARLES WACHOB; LARRY D. GADDIS; JOSEPH O'FLAHERTY; ALAN PINESCHI; MARGARET MURPHY; ANNA MORAN; JENNIFER WELLS; LISA FULTS; DANIEL WESTERBERG; STEVEN KING; BRAD FENOCCHIO; THOMAS R. DALY; PETER MYLNARIK; TED NORDGAARDEN; MATTHEW LEVEQUE; JOHN PASTADOR; JOHN NOVAK; JUNE STEIN; ANTHONY LABOUFF; GERALD O. CARDEN; DAVID HUSKEY; VALIERIE FLOOD; JAMIE EDWARDS; RICHARD CRABTREE; DENNIS KELLER; SHELDON HODGE; JAMES J. LYNCH; HERB WHITAKER; LEGAL SERVICES OF NORTHERN CALIFORNIA; JOHN MENDEZ, TERRY DUCHARME, TERESA RAWSON, ROBERT MARTINO; KEN BROWN; CAROLE BARBER; MICHAEL MARTIN; GREG MARTIN; BRIAN WIRTZ; MIKE HARRIS; KATHY WISTED; FRED YEAGER; REX BLOOMFIELD; RICHARD ARMSTRONG; CHAL DECECCO; FRANK DOMEIER; ART THOMAS; STEPHEN D'ARCY; SALLY LOBB; DENNIS MEEH; EDWARD BONNER; JOHN SWEIKAR; DEVON BELL; DANIEL GRAY; MICHELLE BURNWORTH; ED THOMPSON; DON MICKEL; PHIL HERMANEK; DORY LYN ANDERSON; THE PENINSULA CLARION NEWSPAPER; VELMA BAIER; DARYL BAIER; HILLCREST MOBILE HOME PARK (aka or formerly known as IDLEWHEELS MOBILE HOME PARK); STEVEN WILLIAMS, individually, as agent for and dba HILLCREST PROPERTIES, INC. and HILLCREST PROPERTIES OF FORESTHILL, INC. (also dba HILLCREST MOBILE HOME PARK); KELLY CHRISTENSEN, JAMES WOOD and JOSEPH CARROLL, individually and as Agents or Representatives of HILLCREST PROPERTIES, INC., HILLCREST PROPERTIES OF FORESTHILL, INC., and HILLCREST MOBILE HOME PARK; AMANDA BERTHELOT, Individually and as Personal Representative of the ESTATE OF JOSEPH EDMOND BERTHELOT, JR., Deceased; ESTATE OF JOSEPH EDMOND BERTHELOT, JR.; and MIKE TENNISON,

Defendants.

COMES NOW PLAINTIFFS DIANNE NELSON (hereinafter "NELSON") individually, and on behalf of: J. EDMOND BERTHELOT, DECEASED (hereinafter "DECEASED BERTHELOT", Deceased December 21, 2007) by assignment and trust powers granted under that certain notarized Deed of Trust Dated March 2, 2007, recorded in Homer Recording District 309, Homer, Alaska in Document **2007-004554-0;** RONALD W. WRIGHT (hereinafter "WRIGHT") assigned under that certain notarized Power of Attorney dated October 8, 2007; PAMELA WILBUR (hereinafter "WILBUR") assigned under that certain notarized Power of Attorney dated July 27, 2008, SKYLER WILLIAMS (hereinafter "WILLIAMS") by assignment and powers granted under that certain notarized Power of Attorney executed April ,2008; ED RICHARDSON (hereinafter "RICHARDSON") by assignment and powers granted under that certain notarized Power of Attorney executed May 11, 2009; and STEPHEN SCHOENSTEIN (hereinafter "SCHOENSTEIN") alleging the following claims against Defendants listed hereinabove, and each of them individually, as follows:

## PUBLIC INTEREST STATEMENT

1. This Complaint deals with important issues and rights of ***all*** persons of Defendant UNITED STATES OF AMERICA (hereinafter "U.S."), which Plaintiffs believe to be of great public interest, as this action involves policies, practices and procedures of government (including the majority of Defendants) that adversely and directly affects the rights and well-being of a very large class of persons including the disabled, indigent and elderly. The persons of this large class have repeatedly been controlled, damaged, distressed and injured by improper acts and/or omissions by Defendants that constitute ongoing civil rights abuses, including violation of many privacy and property rights normally guaranteed under federal and state enactments and Constitutions, that have been taking place on a regular ongoing basis for over a 10-year period of time.

2. Plaintiffs have witnessed definite clear patterns of deficiencies and improprieties in the public servant systems, being taken advantage of by Defendants, including improper, unethical and illegal acts and/or omissions, that often involve courts and judges in both the state and federal systems of the judiciary. Therefore, investigation and corrective measures should be immediately undertaken to provide adequate oversight and insure the equality of all persons in these United States.

3. Plaintiffs feel this large class has deliberately been targeted by Defendants because members of this class normally lack the physical and financial means and ability to bring civil rights abuse claims to the Courts for proper redress of grievances allowed under the U.S., Alaska and California Constitutions. Thus, this very large class of persons is more readily preyed upon by Defendants, while they continue to suffer serious losses, damages, distress and injury.

4. As shown below, when Plaintiffs have attempted to address their civil rights grievances about government or the courts in the past, the courts overstep jurisdiction and ignore laws, normally giving preference only to those who can afford an attorney and participating in suppressing evidence, obstructing justice, and causing deprivation of numerous protected rights and privileges.

## I. GENERAL ALLEGATIONS

### A. JURISDICTION, VENUE AND CASE DESIGNATION

5. This Complaint, inter alias, seeks redress pursuant to Title 42 of the Unites States Codes [hereinafter "U.S.C."], §1981 et seq., for violation and deprivation of numerous basic civil rights, and conspiracy to deprive persons of rights, with pendent state law claims.

6 Jurisdiction is founded upon Title 28 U.S.C. §1331 [federal question], §1332 [diversity: Alaska, Nevada, California, New Mexico], §1343 [civil rights], §1367 [supplemental jurisdiction], and the U.S. Constitution, Article III (§2) [giving the Court judicial power to "extend to all cases, in law and equity, arising under this Constitution, the laws of the United States ... between citizens of different states."]; and includes the U.S. as a Defendant.

7 The controversies in this action involve rights to real and personal property valued in excess of $500,000 in the states of Defendant AK and CA. Real properties affected are as follows:

(a) ANCHOR POINT, ALASKA: **Tract C, RIVER RIDGE SUBDIVISION, EASON 1977 ADDITION, according to Plat No. 77-54, HOMER Recording District, THIRD Judicial District, State of ALASKA**, commonly known as 34290 Eason, Anchor Point, Kenai Peninsula Borough (hereinafter "Anchor Point Property");

(b) NIKISKI, ALASKA: 48845 Island Lake Road, Nikiski, AK (hereinafter "Nikiski Property")

(c) FORESTHILL, CALIFORNIA (in Defendant PLACER COUNTY):

(1) 28390 Foresthill Road, CA Defendant PC Assessor's Parcel Numbers 064-150-008-000 and 064-150-035-000 (hereinafter referred to as "28390 FH Property");

(2) 22235 Foresthill Road, #22 (hereinafter "22235 FH #22" Property), 22235 Foresthill Road #75 (hereinafter "22235 FH #75 Property), and 22235 Foresthill Road #46 (hereinafter "22235 FH #46 Property), Foresthill, CA.

(3) 6174 Green Leaf Lane, Defendant PC Assessor's Parcel Number 257-180-005-000 (hereinafter referred to as "6127 Green Leaf Property"), Foresthill, CA; and

(4) 8138 Michigan Bluff Road. Foresthill, CA (hereinafter "Michigan Bluff Property")

## B. PARTIES

8 Plaintiffs NELSON and WRIGHT and are both disabled individuals as defined in the AMERICANS WITH DISABILITIES ACT ("ADA"), and along with Plaintiff RICHARDSON, are adult residents of Defendant STATE OF ALASKA (hereinafter "AK"). Plaintiffs NELSON and RICHARDSON are currently temporarily residing in the state of New Mexico.

9. Plaintiff WILBUR and WILLIAMS are adult residents of Defendant STATE OF CALIFORNIA (hereinafter "CA") and are both disabled individuals under the ADA.

10. Plaintiff DECEASED BERTHELOT, who was also known as J. EDMOND BERTHELOT, JR.; JOSEPH EDMOND BERTHELOT; JOSEPH EDMOND BERTHELOT, JR.; EDMOND BERTHELOT, JR; EDMOND BERTHELOT; and EDMOND BERTHALOT, who died under suspicious circumstances in his home at the Anchor Point Property on December 21, 2007. At the time of his death, DECEASED BERHELOT was a resident of Alaska and the sole owner of his pre-marital Anchor Point Property (34290 Eason Drive) in Defendant AK.

11. Defendant U.S.", through the political subdivisions of Defendants U.S. ATTORNEY GENERAL (hereinafter "U.S. AG"); FEDERAL BUREAU OF INVESTIGATION (hereinafter "FBI"); U.S. 9TH CIRCUIT COURT OF APPEALS (hereinafter "U.S. 9th"); U.S. DISTRICT COURT, EASTERN DISTRICT OF

CALIFORNIA and Anchorage Division in AK (hereinafter collectively "U.S. DISTR."), are governmental entities, established and empowered through our Constitutions, laws and other enactments to serve and protect Plaintiffs and all citizens of the United States of America. These entitles are operating out of the States of Alaska, California and Washington, D.C.

12. Defendants AK ATTORNEY GENERAL (hereinafter "AK AG"); ~~AK SUPERIOR COURT~~ ~~(hereinafter "AK COURT")~~; AK STATE TROOPERS (hereinafter "AK TROOPERS"); AK SUPERIOR COURT-KENAI (hereinafter "KENAI COURT") and AK DISTRCIT COURT-HOMER (hereinafter "HOMER COURT"), hereinafter collectively referred to as "AK COURTS"; AK DEPARTMENT OF PUBLIC SAFETY (hereinafter "DPS"); and AK COMMISSION ON JUDICIAL CONDUCT (hereinafter "AK CJC.") are political subdivisions of AK governmental judicial and administrative systems operating in AK.

13. Defendants MARGARET MURPHY (hereinafter "MURPHY"), ANNA MORAN (hereinafter "MORAN"), JENNIFER WELLS (hereinafter "WELLS"), DANIEL WESTERBERG (hereinafter "WESTERBERG"), MIKE HOUGH (hereinafter "HOUGH"), JUNE STEIN (hereinafter "STEIN"), AMANDA BERTHELOT (hereinafter "A. BERTHELOT"), MIKE TENNISON (hereinafter 'TENNISON"), PETER MYLNARIK (hereinafter "MYLNARIK"), TED NORDGAARDEN (hereinafter "NORDGAARDEN"), MATTHEW LEVEQUE (hereinafter "LEVEQUE"), JOHN PASTADOR (hereinafter 'PASTSADOR"), JOHN NOVAK (hereinafter "NOVAK"), MIKE HERMANEK (hereinafter "HRMANEK"), DORY LYN ANDESON (hereinafter "ANDERSON"), VELMA BAIER (hereinafter "V. BAIER"), and DARYL BAIER (hereinafter "D. BAIER") are all believed to be adult residents of Defendant AK.

14. Defendant ESTATE OF EDMOND JOSEPH BERTHELOT, JR. (hereinafter "BERTHELOT ESTATE") is a probate estate in Defendant AK COURT, for which Defendant A. BERTHELOT received her appointment as informal Personal Representative by the acts of Defendants WESTERBERG, AK COURT and MORAN, and which probate estate is currently being adjudicated, in Defendant KENAI COURT in Defendant AK, in Case **3HO-08-04PR**.

15. Plaintiff NELSON was informed by Defendant CARROLL, and thereon alleges that Defendant STEPHEN WILLIAMS (hereinafter "WILLIAMS") is an adult resident of the State of Nevada.

16. Defendants CA; CA ATTORNEY GENERAL (hereinafter "CA AG"); CA THIRD DISTRICT COURT OF APPEALS (hereinafter "CA 3RD"); CA SUPERIOR COURTS, COUNTIES OF PLACER (hereinafter "PC COURT"), SACRAMENTO (hereinafter "SAC COURT"), RIVERSIDE (hereinafter "RIVERSIDE COURT"), and VICTORVILLE ("VICTORVILLE COURT"); RIVERSIDE DISTRICT ATTORNEY (hereinafter "RIVERSIDE DA"); PLACER COUNTY DISTRICT ATTORNEY (hereinafter "PC DA"); CA HIGHWAY PATROL (hereinafter "CHP"); CALIFORNIA DEPARTMENT OF HOUSING & COMMUNITY DEVELOPMENT (hereinafter "CA DEPT. HOUSING"); PLACER COUNTY (hereinafter "PC"); RIVERSIDE COUNTY (hereinafter "RIVERSIDE"); PLACER COUNSEL (hereinafter "PC COUNSEL"); PLACER COUNTY ADULT PROTECTIVE SERVICES (hereinafter "PC ADULT PROT. SVCS"); PLACER COUNTY PUBLIC WORKS (hereinafter "PC PUBLIC WORKS"); PLACER COUNTY RISK MANAGEMENT (hereinafter "PC RISK MGMT"); PLACER COUNTY SHERIFFS DEPARTMENT (hereinafter "PC SHERIFF"); PLACER COUNTY BUILDING DEPARTMENT (hereinafter "PC BLDG"); PLACER COUNTY ENVIRONMENTAL HEALTH (hereinafter "PC ENV. HEALTH"); PLACER COUNTY

ANIMAL CONTROL (hereinafter "PC ANIMAL CONTROL"); PLACER COUNTY ASSESSOR (hereinafter "PC ASSESSOR"); PLACER COUTY COMMUNITY DEVELOPMENT DEPARTMENT (hereinafter "PC COMM. DEV."); PLACER COUNTY CODE ENFORCEMENT DEPARTMENT (hereinafter "PC CE"); PLACER COUNTY BOARD OF SUPERVISORS (hereinafter "PC BD. SUPV."); PLACER COUNTY GRAND JURY (hereinafter "PC GRAND JURY") are political subdivisions of California's governmental judicial and administrative systems established in Defendant CA to serve and protect the Public, and operating in the State of California.

17. Defendants CHARLES WACHOB (hereinafter "WACHOB"), LARRY D. GADDIS (hereinafter "GADDIS"), JOSEPH O'FLAHERTY (hereinafter "O'FLAHERTY"), ALLEN PINESCHI (hereinafter "PINESCHI"), JOSEPH CARROLL (hereinafter "CARROLL"), STEVEN KING (hereinafter "KING"), BRAD FENOCCHIO (hereinafter "FENOCCHIO"), THOMAS R. DALY (hereinafter "DALY"), ANTHONY LABOUFF (hereinafter "LABOUFF"), GERALD O. CARDEN (hereinafter "CARDEN"), DAVID HUSKEY (hereinafter "HUSKEY"), VALIERIE FLOOD (hereinafter "FLOOD"), JAMIE EDWARDS (hereinafter "EDWARDS"), LISA FULTS (hereinafter "FULTS"), BRIAN WIRTZ (hereinafter "WIRTZ"), RICHARD CRABTREE (hereinafter "CRABTREE"), DENNIS KELLER (hereinafter "KELLER"), JAMES J. LYNCH (hereinafter "LYNCH"), SHELDON HODGE (hereinafter "HODGE"), HERB WHITAKER (hereinafter "WHITAKER"), DON MICKEL (hereinafter "MICKEL"), JOHN MENDEZ (hereinafter "MENDEZ"), TERRY DUCHARME (hereinafter "DUCHARME"), TERESA RAWSON (hereinafter "RAWSON"), KEN BROWN (hereinafter "BROWN"), ROBERT MARTINO (hereinafter "MARTINO"), CAROLE BARBER (hereinafter "BARBER"), MICHAEL MARTIN (hereinafter "M. MARTIN"), GREG MARTIN (hereinafter "G. MARTIN"), MIKE HARRIS (hereinafter "HARRIS"), KATHY WISTED (hereinafter "WISTED"), FRED YEAGER (hereinafter "YEAGER"), REX BLOOMFIELD (hereinafter "BLOOMFIELD"), RICHARD ARMSTRONG (hereinafter "ARMSTRONG"), DENNIS MEEH (hereinafter "MEEH"), FRANK DOMEIER (hereinafter "DOMEIER"), ART THOMAS (hereinafter "THOMAS"), STEPHEN D'ARCY (hereinafter "D'ARCY"), CHAL DECECCO (hereinafter "DECECCO"), EDWARD BONNER (hereinafter "BONNER"), SALLY LOBB (hereinafter "LOBB"), JOHN SWEIKAR (hereinafter "SWEIKAR"), DEVON BELL (hereinafter "BELL"), KELLY CHRISTENSEN (hereinafter "CHRISTENSEN"), JAMES WOOD (hereinafter "WOOD"), ED THOMPSON (hereinafter "THOMPSOIN"), DAN GRAY (hereinafter "GRAY") and MICHELLE BURNWORTH (hereinafter "BURNWORTH"), are all believed to be adult residents of the State of California, and the majority of which are believed to be public servant personnel of governmental political subdivisions.

18. Defendants HILLCREST PROPERTIES, INC. (hereinafter "HILLCREST, INC."), HILLCREST PROPERTIES OF FORESTHILL, INC. (hereinafter HILLCREST FH, INC"), and HILLCREST MOBILE HOME PARK (hereinafter "HILLCREST PARK"), hereinafter collectively referred to as "HILLCREST", are believed to be corporations or sub-companies of corporations, established under either or both the laws of the State of Nevada and/or California, to the best of Plaintiffs' knowledge. Plaintiffs believe Defendant WILLIAMS to be the current controlling officer of HILLCREST, INC and HILLCREST FH, INC.

19. Defendant LEGAL SERVICES OF NORTHERN CALIFORNIA (hereinafter "LSNC") is believed to be a non-profit legal organization (form unknown) operating in and under the laws of the state of CA.

20. Defendant THE PENINSULA CLARION newspaper (hereinafter "CLARION"), is believed to be a business entity, form unknown, operating in the state of AK as a newspaper publication.

21. Plaintiffs believe there are adult parties, other than Defendants named herein, who have also participated or in some way were a part of the acts and omissions listed herein. Plaintiffs are ignorant of the true names and capacities of all parties involved, and therefore hereby request they be allowed to amend their Complaint to allege the true names and capacities of those parties when ascertained.

22. In doing the acts and/or omissions to act hereinafter mentioned, Plaintiffs believe and thereon allege that Defendants, and each of them, acted under color of their authority as agents or representatives or in connection with other Defendants, and in doing those things, acted within the course and scope of such agency.

23. **Complex Designation:** Plaintiffs believe this to be a "complex" case that requires exceptional judicial management for the following reasons:

(a) to avoid placing unnecessary burdens on the court and all litigants;

(b) to insure impartiality and fairness[1];

(c) to keep the costs reasonable for all parties;

(d) to promote effective case management and decision-making by the court for all parties and counsel in a just and equal manner; and

(c) to assure the actual capabilities of the under-represented parties in this action (i.e. their health, disabilities, socioeconomic status, location or age) are properly taken in consideration when deciding to set guidelines for service, filing and responses in reasonable time phases, so those already handicapped by their class are not unreasonably taxed past their abilities and means, and taken advantage of by reason of their handicaps, as some Defendants have done in the past[1];

24. Plaintiffs believe this exceptional management is necessary because this case:

(a) is a civil rights action with numerous complaints of civil rights abuses;

(b) involves a very large number of litigants (over 100) that most likely will be represented by numerous different attorneys;

(c) involves a very large number of claims and causes of action (66);

(d) may require numerous pretrial motions raising difficult and novel legal issues that could be time-consuming to resolve, especially given some of the litigants limited capacities and lack of adequate legal representation;

(e) involves an extremely large amount of evidentiary documentation (one prejudiced civil rights case mentioned in this Complaint had 7 volumes of Clerk's Transcripts, and never even made it to the jury trial of the issues therein, or even through completion of discovery for that matter, as a direct and proximate result of the Court denying reasonable requested accommodations as required under the American's with Disabilities Act ["ADA"]);

---

[1] Plaintiffs are acting pro se, are indigent, and most disabled. It will require more time for theism to participate in preparing and completing the extensive research, discovery, motions, document and trial preparation, because they are already at a clear disadvantage to begin with, as they expect numerous Defendants will be represented by separate counsel. Certain numerous Defendants already have a clearly demonstrated prior history of abusive motion, discovery and delay tactics in connection with several Plaintiffs in cases mentioned herein that will be discussed further in this Complaint.

(f) will require substantial pre-trial supervision, to prevent any abuse or prejudice by deliberate delay tactics (through discovery, motion or other practices), by coordinating discovery and motions in phases sufficient to protect all unrepresented litigants;

(g) will most likely have coordination issues with related actions pending in one or more courts in other jurisdictions within the U.S. (state and federal);

(h) could eventually end up as a "class action" lawsuit, as there is a large number of persons not yet named that are similarly aggrieved by the acts and omissions of Defendants;

(i) will require substantial post-judgment judicial supervision to insure the civil rights abuses by all Defendants have permanently ended, especially given the fact this Complaint contains allegations of abusive judicial conduct in several state and federal jurisdictions.

25. Among other things, there needs to be orders for proper investigation into the allegations, proper supervision and training of public servant personnel restored, more oversight, possible changes in the way civil rights cases are handled by clerks and courts, and finally restoration of equal access, treatment, justice and protection to the indigent, disabled, elderly and/or any person who cannot normally afford proper legal representation.

**C. <u>ATTACHED EXHIBITS</u>**

26. All exhibits to this Complaint are referenced herein as "Attachments". The Attachments include records from other related judicial and non-judicial proceedings that have been scanned and placed on magnetic data (data CD) in PDF format as required by this Court. Since this civil rights case involves numerous other related cases in both the state and federal courts, the documentation is quite extensive, and a Table of Attachments will be provided. In order to make this evidence more "user friendly", it will be separated into files on the CD by Case or Reference Number, then document identifier. References in this Complaint will include case number, document identifier, then page or location in that document, and finally location within the page, to make it easier to reference documentation of facts and involvement by each Defendant.

27. Plaintiff hereby establishes that all exhibits/attachments referenced herein, regardless of length, will be considered part of this civil rights Complaint to evidence the facts and details stated herein, and are therefore incorporated as though fully set forth herein, by this particular reference.

## II. <u>FACTUAL ALLEGATIONS</u>

28. **<u>Attempted Exhaustion of Procedural Remedies Before Filing This Lawsuit</u>:** Plaintiffs have made a large number of attempts to exhaust their procedural remedies before filing this lawsuit, in order to seek redress for their grievances and resolve their disputes through Defendant entities, organizations and persons. All Plaintiffs accomplished in these attempts was being subjected to additional ongoing retaliatory harassment for their whistleblowing, frustration, humiliation, exhaustion, libel, slander, financial and other losses, emotional, mental and physical distress, extreme bias, negligence, prejudice, and discrimination, among other things. Therefore, Plaintiffs do not believe fair and impartial trials of their issues can be had in any of those state or federal jurisdictions named herein or with the Defendant Judges.

29. **<u>Anchor Point Property</u>.**

(a) (i) On March 5, 2007, Plaintiff DECEASED BERTHELOT executed, in front of a Notary Public for the State of Alaska, a Note and Deed of Trust in favor of Plaintiffs NELSON and

WRIGHT, recorded October 22, 2007 as Homer Recorder #2007-04554-0 for consideration of $10,000 (2 checks) DECEASED BERTHELOT received from NELSON and immediately cashed. He had previously been negotiating a $32,000+ loan with McKinley Mortgage, but took NELSON's $10,000 loan instead, with better terms and interest rate.

(ii) The Anchor Point Property was initially acquired by DECEASED BERTHELOT by Quitclaim Deed from KAREN BERG-FORESTR (who held the Note on this property since its' purchase by DECEASED BERTHELOT in about 1991 [see Deed of Trust recorded August 12, 1991, Homer Recorder #1991-002654-0]). Full conveyance of property to DECEASED BERTHELOT took place when he paid the Note and Deed of Trust in full and KAREN BERG-FORRESTER transferred title to this Plaintiff in 2006. Defendant AK DISTRICT COURT-HOMER in Case 3HO-07-54CI shows that this Plaintiff's son and heir, JOSEPH E. BERTHELOT, III, provided that Defendant with copies of all of the receipts demonstrating DECEASED BERTHELOT did in fact make all the payment on this property himself, and with Social Security benefits aside from his earnings as a mechanic that supported AMANDA BERTHELOT, so was not in any way "community property". In KAREN BERG-FORRESTER's notarized Affidavit, on file in Defendant AK COURT Cases **3HO-07-54CI** and **3HO-08-04PR**, she states as follows:

> "No one else has ever had any interest in this property, including Edmund's subsequent wife, Amanda Berthalot; she was carefully and fully apprised of this fact by me, when she first married Edmund Berthalot. Edmund Berthalot paid all of my sister's medical bills, which were massive and paid all his bills the best he could. I have no knowledge of his subsequent wife, Amanda Berthalot, ever participating in assisting him financially."

(iii) Under the March 5, 2007 Deed of Trust Plaintiff DECEASED BERTHELOT assigned his rights to the Anchor Point Property to Plaintiff NELSON as follows:

> "to do and without notice to or demand upon Trustor and without releasing Trustor from any obligation hereof, make or do the same in such manner and to such extent as it deems necessary to protect the security hereof, and with Beneficiary/Trustee being authorized to enter upon said Subject Property for such purposes; appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Beneficiary/Trustee; pay, purchase, contest or compromise any encumbrance, charge or lien which in the judgment of either appears to be prior or superior hereto; and in exercising any such power, pay necessary expenses, employ counsel and pay his reasonable fees and costs associated therewith." [pg. 2, in para. A.6], and
>
> "...confers upon Beneficiary the right, power and authority, during the continuance of these Trusts, to collect the rents, issues and profits of the Subject Property or any part thereof, reserving unto Trustor the right, prior to any default by Trustor in payment of any indebtedness secured hereby or in performance of any agreement hereunder, to collect and retain such rents, issues and profits as they become due and payable. Upon any such default, Beneficiary may at any time without notice, either in person, by agent, or by a receiver to be appointed by a court, and without regard to the adequacy of any security for the indebtedness hereby secured, enter upon and take possession of said property or any part thereof, in its own name sue for or otherwise collect such rents, issue and profits, including those past due and unpaid and apply the same, less costs and expenses of operation and collection, including reasonable attorneys' fees and costs, upon any indebtedness secured hereby, and in such order as Beneficiary may determine. The entering upon and taking possession of said property, the collection of such rents, issues and profits and the application thereof as aforesaid, shall not cure or waive any default or notice of default hereunder or invalidate any act done pursuant to such notice." [pg 2, in para. B.5]

(iv) Plaintiff NELSON accepted the assignment and acted upon it in connection with all of Plaintiff DECEASED BERTHELOT's rights and interests associated with that property, in his place and stead.

(b) $6,000 of the $10,000 loan to DECEASED BERTHELOT was money promised by him to Defendant BERTHELOT for her verbal agreement to jointly execute documents for their dissolution of marriage instead of divorce. She had been caught twice fornicating with other men in DECEASED BERTHELOT's bed and pre-marital asset home and they separated in around April 2006 with Defendant BERTHELOT moving out of his home and in with her mother and step-father Defendant MIKE TENNISON. Instead, after he got the money Defendant BERTHELOT caused him to run around Homer and Anchor Point looking for her when they were scheduled to meet (after which he was hospitalized for several days on more than one occasion), just to delay the filing of their dissolution papers.

(c) Plaintiff DECEASED BERTHELOT was elderly (age 72), in poor health while still trying to work as a mechanic to afford this loan and mounting hospital/medical bills, and frequently in the hospital overnight (sometimes for up to 5 days at a time) at least twice if not more each month, and Defendants AK DISTRICT COURT-HOMER, AK SUPERIOR COURT-KENAI, AMANDA BERTHELOT, ~~DANIEL WESTERBERG~~, MIKE TENNISON and ~~ESTATE OF J. EDMOND BERTHELOT,~~ JR. were all aware of these factors in divorce Case 3HO-07-54CI..

(d) On or about May 11, 2007 Plaintiff DECEASED BERTHELOT made a motion for his final decree of divorce from Defendant BERTHELOT to Defendant AK DISTRICT COURT-HOMER in Case 3HO-07-54CI (or AK SUPERIOR COURT-KENAI). These Defendant courts kept moving his file back and forth from Kenai to Homer at will, with no prior notice to this Plaintiff, then ignored his motion for a final divorce decree for a total of 6 months, causing an extreme prejudice to his case.

(e) Defendants AK DISTRICT COURT-HOMER, AK SUPERIOR COURT-KENIA, WESTERBERG, BERTHELOT, BERTHELOT ESTATE and TENNISON participated in obtaining preference in ~~3HO-07-54CI~~, 3HO-08-04PR, 3HO-08-89CI, 3HO-08-93CI, and 3HO-08-269CI [an appeal from 3HO-08-93CI terminated without adequate due process]). Most of the Motions processed by and/or on behalf of these Defendants were given preference by the other Defendants in an abuse of process.

(f) Defendant BERTHELOT even subverted some of DECEASED BERTHELOT's mail so he was unaware of the action taken in their divorce proceedings intended to deprive him of rights to pre-marital assets (see his Declarations in Case 3HO-07-54CI, Defendant AK-DISTICT COURT-HOMER). On June 4, 2007 Defendant AK DISTRICT COURT-HOMER mailed Plaintiff DECEASED BERTHELOT an Order denying his motion for a final divorce decree, but he did not receive it and believe the issue to still be pending, because Defendant BERTHELOT had taken his mail from his box (he was unaware she still had a key to), so he was kept in the dark about their divorce proceedings.

(g) i) On or about June 21, 2007 Defendant BERTHELOT sought an immediate order depriving DECEASED BERTHELOT of his rights to encumber or sell his pre-marital real property in violation of Alaska laws. Documentation in this divorce file shows she was already aware she had no ownership interest in this pre-marital asset, but put in a written challenge to Plaintiff DECEASED BERTHELOT's right to his pre-marital home (obtained in a former marriage with prior spouse, LINDA BERG-BERTHELOT deceased,

no mention on Deed of Defendant BERTHELOT, and no Community Property Agreement allowed by law for this Defendant to participate in ownership) anyway. By the "certificate of service on the June 21, 2007 Motion, you can see that Defendant BERTHELOT mailed service on Plaintiff DECEASED BERTHELOT by mailing the Motion to herself at her P.O. Box 305, instead of his post office box at 534, in an illegal manner.

ii) Plaintiff DECEASED BERTHELOT never received notice of this hearing ~~because~~ or its outcome because Defendant BERTHELOT had taken this notice out of his mailbox and subverted it for her own attempted gain, so that he was unaware of what took place.

iii) These acts were apparently ~~were apparently~~ carried out by Defendant BERTHELOT in an effort to hold up her divorce with Plaintiff DECEASED BERTHELOT and stave off his marriage to Plaintiff NELSON [DECEASED BERTHELOT and NELSON were engaged to be married after his divorce, since March 2007, and living together at the Anchor Point Property since May 2007. Defendant BERTHELOT was attempting, by her motion, to claim ½ of his pre-marital real property now, and the rest of it when he dies, per her declaration in 3HO-07-54CI.

(h) i) Defendants AK DISTRICT COURT-HOMER and MORAN, despite not receiving any proof of Defendant BERTHELOT's ownership interest in the Anchor Point Property, made an order in or about August 9, 2007 stripping Plaintiff DECEASED BERTHELOT of his real property rights to his pre-marital home. The Court shows no justification for such action, nor refers to any evidence to prove up any interest of Defendant BERTHELOT in that property before stripping this man of his rights. Because of the subverted mail by Defendant BERTHELOT, Plaintiff DECEASED BERTEHLOT was not even timely made aware of the order stripping him of his real property rights without justification or due process.

ii) Plaintiff NELSON alleges this cloud on title by Defendants AK COURT, BERTHELOT and MORAN in Case **3HO-07-54CI** directly and proximately caused the chain of events listed in this Complaint that resulted in serious damage, injury, rights violations and extreme financial hardship to her and several others, as set forth below. Defendants BERTHELOT, AK DISTRICT COURT-HOMER and MORAN's acts and/or omissions to act on August 9, 2007 caused not only the clouding of title to the Anchor Point Property through the date of Plaintiff DECEASED BERTHELOT's demise on December 21, 2007, but also caused him to suffer extensive financial, physical, emotional and mental distress, and other damages and losses.

(i) i) In November 2007 Plaintiff DECEASED BERTHELOT finally got his day in court regarding their final decree of divorce, ***6 months*** after he made his motion for this Order. At this hearing Defendant BERTHELOT was ordered by another Defendant Judge to prove up that she had made payments towards DECEASED BERTHELOT's pre-marital asset home. But Defendant AK DISTRICT COURT-HOMER refused to issue a final decree at this hearing.

ii) At that hearing Plaintiff DECEDENT BERTHELOT asked the court how come he had not gotten his final decree, as he evidently never received a copy of the Court's June 4, 2007 Order denying his May 11, 2007 request for a final decree because of Defendant A. BERTHELOT subverting his mail as indicated above. Defendant AK COURT, through Defendant MORAN, told DECEASED BERTHELOT "the court has to have a hearing", even though they were at a hearing before a Judge at that time (see 11/2/07 "Summary of Proceedings" in 3HO-07-54CI). Defendant AK COURT then set the matter for trial 2 months out

to January 23, 2008, despite DECEASED BERTHELOT's increasingly poor health and numerous frequent hospital stays.

(f) i) December 21, 2007 Plaintiff DECEASED BERTHELOT's dead body was found in his unlocked home, with evidence that the kitchen window at the home had been breached. Although he died under suspicious circumstances while Plaintiff NELSON was taking care of family business in California, Defendants AK and AK TROOPERS refused to investigate his suspicious death and just told NELSON that Plaintiff DECEASED BERTHELOT "was a drunk and just came home and died in his sleep." Being told this by insensitive law enforcement was devastating and distressing to NELSON and his family. What a callous, cold-hearted thing to say to someone mourning over a loved-one's death when Defendants tried to cover up its cause by failed to timely order an autopsy!

ii) Given Plaintiff DECEASED BERTHELOT's continuing declining health, clearly indicated in several court documents in **3HO-07-54CI**, Defendants AK DISTRICT COURT-HOMER and MORAN failed to adequately protect his real property interests, and caused him excessive undue emotional and mental, and physical distress in the 4 months prior to his death under suspicious circumstances. Despite the fact these Defendants received the factual documentation of Plaintiff DECEASED BERTHELOT's payment for the Anchor Point Property from his son and direct heir, so they could settle the property dispute, instead of making a ruling based on the documentation supplied, those Defendants just summarily dismissed the case. Plaintiff alleges a decision on this property issue by that Defendant would have saved tens of thousands of dollars in court costs, foreclosure fees and litigation expenses to Plaintiff NELSON and others, but instead caused her to suffer extreme financial hardship, damages, injuries and abusive civil rights violations as a direct and proximate result of their neglect to act.

(g) Defendant AK and AK TROOPER's refusal to investigate Plaintiff DECEASED BERTHELOT's suspicious death came despite excessive amounts of blood of the bed where he allegedly died in his sleep of alcoholism. Plaintiff NELSON was refused the right to view DECEASED BERTHELOT's body at the mortuary, leading to further suspicion of foul play and racketeering to cover up the true cause of his death.

(h) Defendant BERTHELOT had DECEASED BERTHELOT's remains cremated before anyone was aware an autopsy had not been conducted. The mortuary informed Plaintiff NELSON and Plaintiff DECEASED BERTHELOT's son and heir JOSEPH E. BERTHELOT, III that the Death Certificate had a mistake on it and had to be sent back; they were awaiting the return of a corrected Death Certificate. They did not show us the incorrect certificate either. Defendant BERTHELOT sped up the cremation process using the internet to get the cremation release form, printed it, signed it, took a picture of it, loaded the picture off the camera onto a computer, then emailed it immediately back to the Mortuary so the body could be cremated the very same day JOSEPH E. BETRHELOT, III paid the mortuary bill (and was told at that time by Mortuary personnel the body would not be cremated for 2-3 days), and before anyone realized there was no autopsy to properly determine his actual cause of death had been done.

(i) January 3, 2008 Plaintiff NELSON contacted Defendant WESTERBERG regarding possible representation for foreclosing on the now defaulted Note and Deed of Trust on the Anchor Point Property. After taking almost all of NELSON's information, WESTERBERG asked who was involved and then claimed a conflict of interest as he already represented Defendant BERTHELOT (after he had extracted much

information from NELSON). NELSON continued to live at the Anchor Point Property after asking and getting permission to stay from Plaintiff DECEASED BERTHELOT's son and heir JOSEPH E. BERTHELOT, III. Since no one was stepping forward to make the mortgage payments, NELSON was unable to afford to move from the home where someone she loved may have been murdered.

(j) On or about February 22, 2008, while Plaintiff NELSON was not at home at the Anchor Point Property, Defendant TENNISON, on instruction from Defendants WESTERBERG and BERTHELOT broke, entered, trespassed and vandalized the Anchor Point Property by drilling and changing the existing locks that NELSON had keys to, without any notice, authority or due process of the law (see recording of April 2008 proceedings in 3HO-08-89CI and 3HO-08-93CI),

(k) In around late March 2008, when Plaintiff NELSON returned from staying with a friend who was taking care of her while she was ill and unable to take care of herself, she found she was locked out of her home and had to pay to have the doors re-keyed. Defendant AK TROOPERS were summoned and recommended she take out a Temporary Restraining Order against Defendant TENNISON (see 3HO-08-89CI) who had broken, entered, trespassed and vandalized the home by changing the locks and had repeatedly stalked NELSON in the preceding months.

(l) Defendant MURPHY, AK DISTRICT COUT-HOMER, WESTERBERG, BERTHELOT ESTATE, BERTHELOT and TENNISON prejudicially participated in refusing to extend Plaintiff TENNISON's Restraining Order after the initial temporary period. This neglect of duty to protect a stalking victim therefore allowing TENNISON to continue his harassment and stalking of other persons at the Anchor Point Property, after TENNISON already demonstrated he had no problem breaking, entering, trespassing, vandalizing, stalking and harassing in the past several months.

(m) Defendant AK and AK TROOPERS refused to take a criminal report of the breaking, entering, trespass, vandalism and the stalking and harassment of Plaintiff NELSON by Defendant TENNISON, or investigate the suspicious death of Plaintiff DECEASE BERTHELOT, nor did Defendant AK ATTORNEY GENERAL or KENAI DISTRICT ATTORNEY take adequate steps to see that Plaintiffs rights were protected, and thereby participated in the conspiracy to deprive persons of real property rights.

(n) i) Up through March 21, 2008, Defendants BERTHELOT, WESTERBERG, BERTHELOT ESTATE and TENNISON refused to acknowledge Plaintiff NELSON's Note and recorded Deed of Trust, and failed to insure the Anchor Point Property or make any of the now past due mortgage payments owed under it; so on that date Plaintiff NELSON served Notices of Default and Elections to sell.

ii) These Defendants also refused to pay the Note and Deed of Trust upon its' contracted maturity date March 31, 2008, or negotiate its' extension as recommended under the Alaska Uniform Probate Codes.

iii) In or around late March 2008, Defendants WESTERBERG, BERTHELOT ESTATE, BERTHELOT and TENNISON attempted to usurp Plaintiffs NELSON and WRIGHT's rights under their Note and Deed of Trust with Plaintiff DECEASED BERTHELOT by these Defendants preparing a "Claim" on these Plaintiff's behalf without their knowledge or authority, then objecting to this bogus "Claim" to try to sever rights under that Note and Deed of Trust. They also did this with another claim in the estate, but prejudicially failed and refused to put in a claim for the over $4,000 in funeral-related expenses DECEASED BERTHELOT's son and heir paid on or about December 27, 2007 for his final expenses of death, as these

expenses were supposed to be paid first out of the estate under the Alaska Uniform Probate Code. These Defendants also failed to look into and take care of his last medical/hospital expenses incurred just a day or two to a week before his death.

iv) On April 7, 2008, Plaintiff NELSON recorded three (3) separate Notices of Default and Election to sell (recorder #'s 2008-001401-0, 2008-001402-0 and 2008-001403-0) against the Anchor Point Property, and later amended these with later recording of Amended Notices of Default, adding a Fourth Notice of Default and Election to Sell, and with a sale scheduled for July 15, 2008 under A.S. 34.30-070, et seq. She served all parties as required by Alaska Statutes in accordance with AK statute.

(o) i) Around mid-April 2008 Defendants WESTERBERG, BERTHELOT, BERTHELOT ESTATE and TENNISON conspired to deprive Plaintiff NELSON out of her real property rights and her home at the Anchor Point Property by the filing of an improper "Forcible Entry and Detainer Action" against her in Defendant AK DISTRICT COURT-HOMER, even though A.S.22.15.050 indicates that Court and Defendant MURPHY lacked jurisdiction on possessory rights issues because title to that real property was in dispute at the time.

ii) On April 10, 2008 Defendants WESTERBERG, BERTHELOT ESTATE, BETHELOT and TENNISON tried to use their influence with personnel at HOMER ELECTRICT ASSOCIATION, to have Plaintiff NELSON's electrical service discontinued at the Anchor Point Property, without adequate authority or due process. It took several calls by NELSON to straighten the matter out to keep her electrical service on. After that unsuccessful attempt, they used personnel in HOMER ELECTRIC ASSOCIATION to make complaints about the electrical service at the property that had never been raised before, in order to have service turned off and entirely disconnected by early May, 2008, despite the fact a home with no power would be worth considerably less than one with power.

(p) On or about April 28, 2008 Defendants MURPHY, AK DISTRICT COURT-HOMER, WESTERBERG, BERTHELOT, BERTHELOT ESTATE and TENNISON were fully made aware this Court lacked adequate jurisdiction under the Alaska Statutes (22.15.050) to make any orders in a Forcible Entry and Detainer action in 3HO-08-93CI because title to the Anchor Point Property was clearly in question, as evidenced by the several Notices of Default and Election to Sell previously recorded by Plaintiff NELSON against that property, along with proof of service, posting and mailing of these Notices. These Defendants participated in obtaining an Order and Writ of Execution to evict NELSON from her home without any adequate justification or legal authority without any adequate jurisdiction, even though evidence at the hearing demonstrated it was Defendants WESTERBERG, BERTHELOT, BERTHELOT ESTATE and TENNISON that actually participated in "forcible entry and detainer", not NELSON.

(q) On April 28, 2008 Defendants AK DISTRICT COURT-HOMER, MURPHY, WESTERBERG, BERTHELOT, BERTHELOT ESTATE and TENNISON participated in refusing reasonable requested accommodations to Plaintiff NELSON, normally afforded under the Americans With Disabilities Act ("ADA"), for extra time for this permanently physically disabled individual to be given more than 3 days to move out. These Defendants were made fully aware at the time that this Plaintiff was restricted by her physician's orders not to lift over 5-10 lbs., had no where to move, no where to store her stuff, no way to move her stuff, and no money to accomplish any of this. Yet they maliciously, and with wanton disregard for the

health and well-being of NELSON, failed and refused NELSON's request for reasonable accommodations normally afforded by Alaska Statutes.

(r) i) On April 30, 2008, two days before Plaintiff NELSON's ejectment by Defendants AK TROOPERS from the Anchor Point Property, NELSON requested Defendants AK DISTRICT COURT-HOMER, MURPHY, WESTERBERG, BERTHELOT ESTATE and BERTHELOT reconsider the erroneous decision by the Court because it lacked adequate jurisdiction, before she was put out on the street without anywhere to go. These Defendants refused to entertain this request, and violated Alaska Statutes by depriving her of valuable contractual rights in her Note and Deed of Trust against the property.

ii) On May 1, 2008, prior to Plaintiff NELSON's ejectment from the Anchor Point Property, she petitioned Defendant AK ~~DISTRICT~~ Superior COURT-~~HOMER~~ Kenai, MURPHY, WESTERBERG, BERTHELOT, BERTHELOT ESTATE and TENNISON by motion on expedited consideration for immediate emergency injunctive relief in 3HO-08-04PR, to obtain relief from the FED Order obtained with their participation without adequate jurisdiction. Defendants AK SUPERIOR COURT-KENAI and MORAN denied her petition and referred her back to Defendants AK DISTRICT COURT-HOMER and MURPHY in violation of A.S. 22.15.050 that prohibited that court from maintaining jurisdiction.

iii) When Plaintiff NELSON filed a Motion to Dismiss 3HO-08-93CI for lack of jurisdiction in late May 2008, it sat on Defendants AK DISTRICT COURT-HOMER and MURPHY's desk for almost 6 months.

(s) On or about May 2, 2008 Defendants AK TROOPERS executed a Writ and had Plaintiff NELSON removed from her home despite her legal standing to remain there under her bona fide Note and Deed of Trust with Plaintiff DECEASED BERTHELOT. NELSON had to go to a homeless shelter in Homer where she had to stay for 5 weeks before she could get suitable housing. NELSON had to sell her 1989 Saab at a loss of over $500 because all of the above put her in a dire financial position.

(t) On or about May 4, 2009 Plaintiff NELSON suffered heart problems (only 2 days after her improper ejectment by Defendants that lacked jurisdiction to take such action. Her blood pressure shot up to 214/134, and it was recommended by the supervisor at the homeless shelter who took her blood pressure, that NELSON go to the local hospitalized emergency room where she was admitted overnight. Since then, NELSON has incurred over $50,000 in medical-related expenses as a result of this new heart condition, and the medical bills to her have effectively ruined her credit over the past year and prevented her from purchasing a home, taking out loans, and obtaining credit.

(u) About Plaintiff NELSON's fourth week at the homeless shelter in Homer, the homeless shelter asked her to leave as she was a "liability" because they said her disabilities jeopardized the shelter since they were not set up to handle persons like her needing extra assistance. After her 5th week there she obtained assistance from Plaintiff RICHARDSON to provide her with suitable housing.

(v) On or about June 27, 2008 Plaintiff NELSON filed two separate creditor's claims with Defendant BERTHELOT ESTATE in Defendant AK SUPERIOR COURT-KENAI. One claim was for losses, damages and costs arising from her Note and Deed of Trust with DECEASED BERTHELOT totaling over $5,000 over and above the underlying $10,000 borrowed, and a second claim for the now mounting medical expenses and severe physical, emotional and mental distress caused her by the improper acts of Defendants AK

SUPERIOR COURT-KENAI, AK DISTRICT COURT-HOMER, MORAN, MURPHY, WELLS, WESTERBERG, BERTHELOT, BERTHELOT ESTATE and TENNISON.

(w) On July 15, 2008 a foreclosure sale was held for the Anchor Point Property, without any objections lodged at that sale. The winning bidder, Plaintiff RICHARDSON, received a recorded Trustee's Deed, and an Amended Trustee's Deed recorded in Homer under #2008-003113-0.

(x) Evidently, unbeknownst to Plaintiff RICHARDSON (who had prudently researched the Homer Recorder's Records 10-20 minutes prior to the foreclosure sale on the Anchor Point Property and found there was nothing in the records to prevent this sale), Defendants WESTERBERG, BERTHELOT, TENNISON, BERTHELOT ESTATE, AK SUPERIOR COURT-KENAI, WELLS and MORAN conspired to deprive him of his rights to that property by recording, on July 17, 2008, a not-fully-ripe Order Staying the Foreclosure Sale, dated July 8, 2008 at a hearing both NELSON and RICHARDSON were not aware had taken place. Plaintiffs NELSON and RICHARDSON did not find out about this stay order until August 4, 2008, as these Defendants were aware NELSON was out of the State of Alaska, and took advantage of this fact by trying to get court orders taking away hers, Plaintiff RICHARDSON and WRIGHT's real property rights without their knowledge.

(y) Although Plaintiff RICHARDSON was not a party to the action in Defendant AK SUPERIOR COURT-KENAI (3HO-08-04PR), [redacted] Defendants WESTERBERG, BERTHELOT, TENNISON, BERTHELOT ESTATE, WELLS and MORAN acted out of jurisdiction and in violation of laws and statutes, taking much leeway in depriving him of important real property rights without adequate due process of the law.

(z) On August 5, 2008, Plaintiff RICHARDSON filed suit in Defendant U.S. DISTR. CT. (Anchorage, AK, #3:08-CV-00182-RRB) to obtain redress of his grievances against the above-named Defendants, and recorded a Notice of Pending Action with the Homer Recorder in Document 2008-003120-0. This Defendant Court immediately dismissed his action indicating it was not allowed, even though the U.S. and state laws and Constitutions prohibit interference with his civil rights in this manner, as he should have been allowed the prevented government redress of grievances and due process of the law.

(aa) Plaintiff NELSON attempted to obtain government redress of grievances through Defendants U.S., U.S. AG, FBI, U.S. 9TH, U.S. DISTR. CT., AK, AK AG, AK SUPERIOR COURT-KENAI, AK DISTRICT COURT-HOMER, BERTHELOT ESTATE, AK TROOPERS, AK CJC, MURPHY, MORAN, WELLS, MYLNARIK, NORDGAARDEN, LEVEQUE, PASTADOR, HOUGH, NOVAK and STEIN, but was denied basic civil right and caused extensive damages totaling over $75,000 and detriment to her health.

(bb) On March 25, 2009 Plaintiff RICHARDSON sold and transferred his ownership interest in the Anchor Point Property to STEPHEN SCHOENSTEIN by Quitclaim Deed (recorded March 31, 2009, #2009-001078-0), at an over $5,000 loss to RICHARDSON and accepted a down-payment and Note and notarized Deed of Trust from SCHOENSTEIN in consideration of the sale.

(cc) On or about March 30, 2009 Plaintiff SCHOENSTEIN verbally rented the Anchor Point Property to a 3rd party with a 6-month lease agreement executed between these parties. The tenant began occupancy at the home on the Anchor Point Property as of that date. The tenant, with permission from Plaintiff

SCHOENSTEIN, secured the home by installing locks only he had a key to, and agreed to continue to store valuable possessions of Plaintiff RICHARDSON at the property until he returned to AK.

(dd) On or about March 31, 2009, Defendants AK SUPERIOR COURT-KENAI, MORAN, WESTERBERG, BERTHELOT ESTATE, BERTHELOT and TENNISON participated in stripping Plaintiffs NELSON, WRIGHT, RICHARDSON and SCHOENSTEIN (and his tenant) of real property rights originally conferred by contract in DECEASED BETHELOT's Note and Deed of Trust to NELSON on March 2, 2007 (committed to writing March 5, 2007, and recorded in Homer Recorder #2007-04554-0) and the Trustee's Deed from NELSON to RICHARDSON, without adequate legal right or evidence to authorize or justify such deprivation of real and personal property, privacy and other rights.

(ee) On April 3, 2009 Plaintiff SCHOENSTEIN faxed Defendant AK TROOPERS (through Trooper BROWNING in Homer) about interference with his tenant at the Anchor Point Property, along with a copy of his March 25, 2009 Quitclaim Deed. SCHOENSTEIN had not yet been notified of the Order Defendants AK SUPERIOR COURT-KENAI, MORAN, WESTERBERG, BERTHELOT ESTATE, BERTHELOT and TENNISON all participated in, that alleged to terminating Plaintiffs NELSON and RICHARDSON's rights under the Note, Deed of Trust, foreclosure documents and Trustee's Deed, as he was not and currently is not a party to that action in AK SUPERIOR COURT-KENAI Case 3HO-08-04PR.

(ff) On or about April 14, 2009 Defendants AK SUPERIOR COURT-KENAI, MORAN, WESTERBERG, BERTHELOT ESTATE, BERTHELOT and TENNISON participated in stripping 3rd parties of valuable real property rights without adequate due process to Plaintiff SCHOENSTEIN or his tenant at the Anchor Point Property. These Defendants did willfully, recklessly and carelessly participate in obtaining a Writ of Assistance ordering Defendants AK TROOPERS to eject everyone from that property, even though they were fully aware by the documents presented to the Court that Plaintiff SCHOENSTEIN (current owner of the property) and his tenant were not yet parties to the action, nor had they been served any process or notification whatsoever of the proceedings or documents that were designed to strip them of their rights to real and personal property, along with privacy rights.

(gg) On or about April 29, 2009 Plaintiffs NELSON and RICHARDSON finally received notification of Defendants AK SUPERIOR COURT-KENAI, MORAN, WESTERBERG, BERTHELOT ESTATE, BERTHELOT and TENNISON's acts to obtain the improper (unauthorized without due process on owner and tenant) Writ of Assistance against property now held in title by Plaintiff SCHOENSTEIN and occupied by a 3rd party tenant under a 6-month lease agreement.

(hh) On or about April 29, 2009 through May 10, 2009, Plaintiffs NELSON, SCHOENSTEIN and/or RICHARDSON contacted the following individuals and agencies regarding the improperly obtained Writ of Assistance: Defendants FBI, AK CJC, AK AG, DPS, AK TROOPERS, MYLNARIK, LEVEQUE, NOVAK and AK SUPERIOR COURT-KENAI and the fact it was obtained fraudulently through abuses of the judicial process, and should be immediately stayed. They were all contacted to try to prevent privacy invasion and the taking of valuable real property rights of SCHOENSTEIN and his tenant without adequate due process of the law and in violation of the Alaska Statutes and U.S. and AK Constitutions. All these Defendants failed and refused to take appropriate action to protect property and other valuable rights guaranteed by law and U.S. and state Constitutions.

(ii) On or about May 1, 2009 Defendant TENNISON (at the request of Defendants WESTERBERG, BERTHELOT and BERTHELOT ESTATE), broke, entered, trespassed and vandalized the Anchor Point Property by deliberately destroying the locks and changing them, and effectively locking out Plaintiff SCHOENSTEIN and his tenant without adequate due process of the law, thus stripping those Plaintiffs involved with this property of over $100,000 in property rights otherwise protected by law. Defendants AK TROOPERS, MYLNARIK, NORDGAARDEN and LEVEQUE aided and abetted this activity by failing and refusing to protect this 3rd parties property interests, even though they were all fully aware of the fraud and abuse of process used to obtain the improper Writ of Assistance without Plaintiff SCHOENSTEIN (or his tenants) knowledge or any notice whatsoever to either of them.

(jj) Although Plaintiffs WRIGHT and SCHOENSTEIN (and his tenant at the Anchor Point Property) currently are not parties to Defendant AK SUPERIOR COURT-KENAI Case 3HO-08-04PR, (as they were never served formal process or added as parties in that action), Defendants FBI, U.S. DISTR. CT., AK, AK AG, AK SUPERIOR COURT-KENAI, AK DISTRICT COURT-HOMER, AK TROOPERS, AK CJC, MURPHY, MORAN, WELLS, MYLNARIK, NORDGAARDEN, LEVEQUE, PASTADOR, NOVAK, STEIN, WESTERBERG, BERTHELOT, TENNISON, BERTHELOT ESTATE and/or HOUGH knowingly participated in depriving these Plaintiffs of valuable and important property rights with their deliberate, willful, wanton, egregious and reckless acts or omissions to act to stop the illegal invasion into their home.

(kk) These knowledgeable and deliberate acts or omissions by Defendants FBI, U.S. DISTR. CT., AK, AK AG, AK SUPERIOR COURT-KENAI, AK DISTRICT COURT-HOMER, AK TROOPERS, AK CJC, MURPHY, MORAN, WELLS, MYLNARIK, NORDGAARDEN, LEVEQUE, PASTADOR, NOVAK, STEIN, WESTERBERG, BERTHELOT, TENNISON, BERTHELOT ESTATE and/or HOUGH have deprived Plaintiffs SCHOENSTEIN and WRIGHT out of valuable and important real and personal property rights valued at over $75,0000.

(ll) The chain of title between the Plaintiffs still remains unbroken, as no formal action as required by Alaska Statutes (A.S. §09.10.030, 09.35.270, 34.25.010) has been taken to deprive Plaintiff SCHOENSTEIN of his ownership and possessory rights to the Anchor Point Property. Even A.S. 13.16.460(c) and 13.16.505 strictly prohibits the interference by Probate estate in the enforcement of rights on real property through contract, and the property was properly foreclosed upon under A.S. 34.20.070 and 080 (properly noticed, posted, served and published sale at public auction).

(mm) Under Alaska Uniform Probate Code, the intent of that statute as outlined in A.S.3.06.010 states, in pertinent part: "Purposes; rule of construction. (a) AS 13.06 - AS 13.36 shall be liberally construed and applied to promote their underlying purposes and policies. (b) The underlying purposes and policies of AS 13.06 - AS 13.36 are to ... (2) *discover and make effective the intent of a decedent in distribution of the decedent's property;* (3) promote a speedy and efficient system for liquidating the estate of the decedent and making distribution to the decedent's successors;" [emphasis added]. It is clear by all of the above that this "intent" was not carried out by Defendants AK COURT, MORAN, WELLS, MURPHY, WESTERBERG, BERTHELOT and BERTHELOT ESTATE.

(nn) Plaintiffs NELSON, WRIGHT, RICHARDSON and SCHOENSTEIN allege that as a direct and proximate result of the acts, errors and omissions of Defendants AK COURT, MORAN, WELLS,

MURPHY, A. BERTHELOT, BERTHELOT ESTATE and WESTERBERG, they suffered irreparable physical harm and severe emotional distress, and lost a considerable sum of money in litigation costs and fees and expenses, including over $70,000 in medical expenses incurred for both NELSON and RICHARDSON incurred as a direct and proximate result of the acts of these Defendants and resulting from the further negligent acts or omissions of Defendants AK, AK AG, AK TROOPERS, MYLNARIK, LEVEQUE, NORDGAARDEN, NOVAK, STEIN, PASTADOR and HOUGH. Under 42 United States Code ("U.S.C") 1981 through 1988, and provisions of the U.S. and Alaska State Constitution, these Defendants should be held directly accountable for Plaintiffs damages, injuries and suffering.

*(00) Plaintiffs allege these Defendants acts and/or omissions were knowing, deliberate, wanton, reckless and wilfull, and with complete and utter disregard for the well being of Plaintiffs. As a result, these Defendants should not only be held accountable for Plaintiffs' damages and injury, but also for punitive, special and exemplary damages as well, in an amount not less than $50,000, taking into account all that these Plaintiffs have been put through by Defendants acts and/or omissions to act.

30. __**22235 FH #22, #46 and #75 Properties.**__

(a) In 2003, Plaintiff WRIGHT entered into a Rental Agreement with Defendant HILLCREST PARK (at the time dba IDLEWHEELS MOBILE HOME PARK) in connection with that certain 1971 Van Dyke Mobile Home (Serial No. S1336, LAB No. A458443, hereinafter "#22 Mobile Home"), while Plaintiff NELSON's mother LAURA NELSON resided there.

(b) At no time since 2003, up through the date of this Complaint, has Defendants HILLCREST PARK, HILLCREST, WILLIAMS, CARROLL or CHRISTENSEN ever terminated the Rental Agreement with Plaintiff WRIGHT for Space #22 that his and Plaintiff NELSON's mobile home sit on. In fact, C.C.§798.56 et seq. prohibits the termination even of a contract for less than twelve months, without taking certain steps these Defendants did not take. Therefore this Rental Agreement still to this day remains in full force and affect for Plaintiff WRIGHT, and WRIGHT and NELSON have been making regular monthly space rent and estimated utility payments to Defendants HILLCREST PARK and CHRISTENSEN even up to today for their mobile home at 22235 FH #22.

(c) In early 2005 Defendants HILLCREST, HILLCREST PARK and CHRISTENSEN began a course of retaliatory harassment against Plaintiffs NELSON after NELSON reported improper and illegal activity to Defendant PC DA (along with 5 other complaints from 5 separate owners of homes in HILLCREST PARK). The former manager of HILLCREST PARK left unexpectedly in the middle of the night right after the 6 complaints were submitted to the PC DA.

(d) In 2005 Defendants HILLCREST, HILLCREST PARK and CHRISTENSEN falsified a crime report to Defendant PLACER COUNTY SHERIFF'S DEPARTMENT regarding a guest of Plaintiff NELSON while NELSON was staying at Space #46 in Defendant HILLCREST PARK. Defendants HILLCREST, HILLCREST PARK and CHRISTENSEN had Plaintiff NELSON's guest (COLLEEN BARNARD) improperly removed from the home NELSON was staying in at #46, by telling Defendant THOMAS that the guest had somehow "trespassed" onto CHRISTENSEN's property, which was totally unfounded to begin with.

(e) Defendant THOMAS verified that the guest had merely traveled on the public easement through the park and then onto Space #46 where Plaintiff NELSON was currently a temporary resident, and that no "trespass" had actually taken place. Despite this, these Defendants had Plaintiff NELSON's guest removed from Space #46 at Defendant HILLCREST PARK under threats of arrest and detainment, and in violation of her and her guests CA and Constitutional rights.

(f) Also in 2005 Defendants HILLCREST PARK and HILLCREST, through Defendant CHRISTENSEN, and at the instruction of Defendant WILLIAMS, began overcharging rent and utilities for #22 Mobile Home, and started making bogus Notices of Default to attempt to take over the #22 Mobile Home. Plaintiff NELSON made allegations about ongoing improper activity of Defendant HILLCREST PARK (along with 5 other complainants from HILLCREST PARK), to Defendant PC DA's Office (which Defendant FENOCCHIO supervises), which Complaints went uninvestigated, as that office indicated they did not have the manpower or staff to conduct an investigation. Defendant CALIFORNIA MOBILE HOME OMBUDSMEN also refused to investigate the over-billing by these Defendants when asked by Plaintiff NELSON.

(g) In April 2007 the #22 Mobile Home was sold by written contract by LAURA NELSON to a third party. Defendants HILLCREST, HILLCREST PARK, CHRISTENSEN, CARROLL and WILLIAMS refused to give a Rental Agreement to this third party, despite his clear ability to pay the $341/month space rent and utilities for #22 Mobile Home, as this 3rd party's yearly income was proved to be over $50,000. Despite this good income, these Defendants told the 3rd party purchaser that he did not have he ability to pay space rent and utilities, and then denied his application based on "credit score" even though they did not even run a credit check on him and the California Mobile Home Residency Law ("MHRL", C.C.§798, et seq.) prohibits using a credit report or score to deny residence at a mobile home park.. As a result, the 3rd party had to move 3 times in a 3-month period of time, lost income from employment attempting to obtain the Rental Agreement, and lost lots of income on moving expenses, plus the #22 Mobile Home (his first home) he believed he had purchased, as he and his young family were the target of deliberate discrimination because of their age.

(h) In around May 2007, the services of legal counsel through Defendants LSNC were obtained by Plaintiff NELSON on behalf of her Mother LAURA NELSON to protect her rights to the 22235 FH #22 Mobile Home because Defendants HILLCREST, HILLCREST PARK, CARROLL, CHRISTENSEN and WILLIAMS were charging her about $500 rent and utilities each month for a home she thought she sold in April 2007; these charges totaled about $1,500 before Defendant WILLIAMS offered to buy the mobile home LAURA NELSON owed over $4,000 on, for only $2,000 after several months of refusing her qualified purchaser a rental agreement.

(i) In around June 2007 Defendants LSNC obtained LAURA NELSON's complaint against Defendants HILLCREST and HILLCREST PARK, CARROLL, CHRISTENSEN and WILLIAMS and wrote a letter to Defendant CARROLL in rebuttal and response to CARROLL's letter rejecting the 3rd party purchasers tenancy at Defendant HILLCREST PARK. Unfortunately, one letter is all Defendants LSNC did for LAURA NELSON. These Defendants and Defendant WHITAKER (who is an attorney at LSNC) took no action to stop Defendants HILLCREST, HILLCREST PARK, CARROLL, CHRISTENSEN and WILLIAMS from keeping LAURA NELSON from selling her mobile home at 22235 FH #22 to qualified buyers. Instead they essentially left LAURA NELSON unrepresented, and in the end, the only other participation by these

Defendants in this matter was having LAURA NELSON transfer the home in a voluntary repossession to Plaintiff s WRIGHT, and NELSON (her daughter, to protect her equity interest of over $7,500), in front of one of Defendant LSNC staff. These Defendants should not have taken on LAURA NELSON's case if they did not wish to adequately protect her financial interests to 22235 FH #22 or help her to get her qualified purchasers approved. As a result of Defendants acts and omissions LAURA NELSON suffered financial elder abuse in an amount of approximately $9,000 ($7,500 she lost from the sale, plus an additional $1,500 in rents she had to pay for her empty home at 22235 FH #22, while waiting for LSNC and WHITAKER to protect her rights.

(j) In or around June or July 2007 Defendants CHRISTENSEN, CARROLL, HILLCREST, HILLCREST PARK, WILLIAMS attempted deprived Plaintiff WRIGHT out of his $4,500 equity interest in the mobile home at 22235 FH #75 established by his Note against the mobile home there. The resident there, who owed Plaintiff WRIGHT over $4,500 on a Promissory Note as a direct lien on this mobile home, abandoned the property and these Defendants failed and neglected to notify Plaintiff WRIGHT of the abandonment and breaches in the Rental Agreement for 22235 FH #75 in a timely, due process manner as required under MHRL 798.56 and other sections of the MHRL.

(k) Plaintiff WRIGHT believes, and thereon alleges that Defendants HILLCREST, HILLCREST PARK, CARROLL, CHRISTENSEN, WILIAMS and MICKEL held an improperly noticed "Wharehouseman's Lien" sale of 22235 FH #75 mobile home without giving any adequate due process notice to Plaintiff WRIGHT and without his actual knowledge or consent. Plaintiff WRIGHT has lost over $4,500 in equity in this home that these Defendants have conspired to convert for their own use.

(l) In May, June and July 2007 Defendants CHRISTENSEN, CARROLL, HILLCREST, HILLCREST PARK insisted they would only take rent for 22235 FH #22 from LAURA NELSON and no one else, despite the fact she moved from 22235 FH #22 to a seniors complex in Auburn, California in April 2007, and was now having to pay rent/utilities at two places (her Auburn home and for 22235 FH #22 Mobile Home). As a result, these Defendants participated in financial elder abuse to LAURA NELSON in the form of bilking her out of almost $1,500 in rents and utility payments, while refusing to allow her qualified purchasers permission live in Defendant HILLCREST PARK and losing $7,500 on its sale.

(m) Defendant PC ADULT PROT. SVCS. was called by Plaintiff NELSON to report Defendant HILLCREST PARK, HILLCREST, CHRISTENSEN, CARROLL and WILLIAM's financial elder abuse involving LAURA NELSON, and they turned the case over to Defendant PC SHERIFF who refused to investigate, no action was taken to correct the problem, and no restitution was ever obtained for the over $9,000 in financial elder abuse suffered by LAURA NELSON as a direct and proximate result of these Defendants acts and omissions. In fact, Defendants PC SHERIFF and PC ADULT PROT. SVCS. allowed the continuing harassment and overcharging by the other involved Defendants without taking any adequate steps to stop further damage and injury to LAURA NELSON or any other individual.

(n) In the beginning of July 2007 Plaintiff NELSON (having been give a Power of Attorney by LAURA NELSON to 22235 FH #22, permission by her and Plaintiff WRIGHT who held a valid Rental Agreement for Space #22 at 22235 FH #22 with Defendant HILLCREST PARK, plus under the confines of C.C.§798.35) moved into 22235 FH #22, and had her daughter-in-law HANNAH MACKAY and MACKAY's 1 and 3 year old children move in with her that month.

(o) On July 5, 2007 Defendants WILLIAMS, CARROLL, HILLCREST and HILLCREST PARK, through Defendant CHRISTENSEN, began harassing Plaintiffs NELSON and, MACKAY, by pounding on the door at #22 Mobile Home at 9:30 p.m., waking Plaintiff NELSON up, and telling her she had to leave immediately, posting threatening letters at #22, and then having propane service to the home turned off that evening, despite the fact Plaintiff NELSON had authority under C.C.§798.35 to stay there. Plaintiff NELSON called Defendant PC SHERIFF and a report was taken either late that evening or on July 6, 2007 a.m. by a Sheriff's Officer regarding the harassment and improper utility shutoff by Defendants.

(p) On July 12, 2007 violence erupted when Defendant CHRISTENSEN broke the car window on HANNAH MACKAY's automobile parked alongside 22235 FH #22, while CHRISTENSEN was leaving that space and peeling out with her car immediately after she posted a notice at the mobile home that day. Defendant PC SHERIFF arrived on the scene of this vandalism and took a report, but Defendant PC DA (supervised by Defendant FENOCCHIO) refused to prosecute or obtain restitution from Defendant CHRISTENSEN for the damages to MACKAY's vehicle totaling around $200 or the rental vehicle needed to replace it while awaiting the repair of the broken window. MACKAY and Plaintiff NELSON took out a Temporary Restraining Order ("TRO") against Defendant CHRISTENSEN to prevent any further violence in Defendant PC COURT Case No. **#SCV21370** (*Mackay v. Christensen*).

(q) Immediately after Defendant CHRISTENSEN was served her TRO, she immediately breached it by having a Notice she had written posted on the door at 22235 FH #22, again threatening Plaintiff NELSON with eviction for no justifiable cause as she was there with permission, all rents and utilities had been paid and there were no breaches of Plaintiff WRIGHT's Rental Agreement with Defendants HILLCREST and HILLCREST PARK for 22235 FH #22. Defendant PC SHERIFF refused to take a report of Defendant CHRISTENSEN's violation of the TRO.

(r) Immediately after HANNAH MACKAY's car window was broken by Defendant CHRISTENSEN, she felt threatened and vulnerable with her two small children (1 and 3), and moved herself and her children from 22235 FH #22 to temporarily stay at a relatives home. A few months later, most likely due to the distress of moving 3 times in 3 months, MACKAY's 3-year-old son came down with Rheumatoid Arthritis in both his knees, and had to crawl around the house upon getting up from bed in the morning for hours, until he could finally stand and limp around the house. This condition has come and gone numerous times in the following year, causing great pain and discomfort to this small child, as a direct and proximate result of the improper acts by Defendants HILLCREST, HILLCREST PARK, CARROLL, CHRISTENSEN and WILLIAMS.

(s) To further the end result of trying to fraudulently convert 22235 FH #22, Defendant WILLIAMS offered LAURA NELSON $2,000 for the Mobile Home (less than she paid for her home that was purchased from HILLCREST while it was called IDLEWHEELS, and after over $10,000 in repairs and remodeling had been completed to the home), after she indicated to him she could no longer pay the almost $500 in rent and estimated utilities for her vacant trailer after already losing $9,000. LAURA NELSON's savings account and part of her August 2007 income was taken by this financial elder abuse by these Defendants, with no governmental agency wishing to step in to see that she got her money back, or that this never happened to anyone else in the future.

(t) The question still remains as to how many persons have Defendants HILLCREST, HILLCREST PARK, CHRISTENSEN, CARROLL and WILLIAMS defrauded out of their homes at HILLCREST PARK by this very same scam of refusing qualified purchasers, pushing the sellers to continue to pay rent for an empty home, then offering them a pittance for their home after participating in excluding their qualified purchasers. This rises to the level of conspiracy to defraud.

(u) On August 8, 2007 Plaintiffs WRIGHT and NELSON became "Registered Owners" of the mobile home at 22235 FH #22. Plaintiff NELSON continued to occupy the mobile home under the terms of the Rental Agreement and the confines of C.C.§798.75(d), and her and Plaintiff WRIGHT began paying space rent and utility payments for the #22 Mobile Home to HILLCREST, HILLCREST PARK and CHRISTENSEN.

(v) Defendants HILLCREST, HILLCREST PARK, WILLIAMS, CARROLL and CHRISTENSEN refused the tendered space rent/utility payments from Plaintiffs NELSON and WRIGHT, and started mailing all payments from them back via certified mail. Since August 2007 Plaintiffs NELSON and WRIGHT have continued (even through this month), to make regular monthly space rent/utility payments to Defendants HILLCREST PARK, through Defendant CHRISTENSEN as required under WRIGHT's still valid Rental Agreement with HILLCREST PARK.

(w) In or around early August 2007 Defendants WILLIAMS, HILLCREST, HILLCREST PARK, CHRISTENSEN and CARROLL began a Forcible Entry and Detainer Action against Plaintiff NELSON and MACKAY, even though there was no "forcible entry" or "forcible detainer" and MACKAY had already moved out after her car window was broken by Defendant CHRISTENSEN, in Defendant PC COURT in Case No. **MCV28065** (*Hillcrest v. Nelson, et al*).

(x) From the beginning of Defendant PC COURT Case MCV28065 in or around early August 2007, Defendants HILLCREST, HILLCREST PARK, CARROLL, WILLIAMS and CHRISTENSEN began deliberately misdirecting mail to Plaintiff NELSON by mailing notices and court filings to a locked mailbox that NELSON nor anyone else associated with 22235 FH Rd had a key to, and despite the fact these Defendants were previously made aware of NELSON's actual mailing addresses (a P.O. Box in Foresthill). Because of this misdirected mail by these Defendants, defaults were taken against several unrepresented parties who did not even live there anymore, without their knowledge, as they did not receive adequate due process notification of the proceedings because of the misdirected mail.

(y) Plaintiff NELSON did not receive adequate due process notification of the proceedings from Defendants PC COURT, HILLCREST, HILLCREST PARK, CARROLL, WILLIAMS and CHRISTENSEN either because they deliberately misdirecting her mail; on September 7, 2007, only 4 days before the Forcible Entry and Detainer hearing on September 11, 2007 in Defendant PC COURT Case **MCV28065**, NELSON finally received notification that a hearing had actually been scheduled in that case, while she was at the court researching another file

(z) Defendant PC COURT even participated in mailing notifications regarding Defendant HILLCREST's forcible entry and detainer action to the wrong address Defendants HILLCREST, HILLCREST PARK, CHRISTENSEN, CARROLL and WILLIAMS had used, as it failed to give Plaintiffs in that case (including NELSON) adequate due process notice of all the proceedings in **MCV28065**. The initially scheduled hearing in this case had to be continued due to the lack of proper due process notice, thus taking up additional

time and expenses of Plaintiff NELSON who had traveled over 3,000 miles from her home in Alaska and who was bearing lots of extensive travel expenses, including a rental car

(aa) On or about September 25, 2007 Defendant HILLCREST, HILLCREST PARK, CARROLL, CHRISTENSEN and WILLIAMS improper Forcible Entry and Detainer Case **MCV28065** against Plaintiff NELSON in Defendant PC COURT, was set to be heard in Department 3 before Judge NICHOLS. Five days prior to this hearing (9/20/07) Plaintiff NELSON submitted a letter to Defendants PC COURT, WACHOB, GADDIS and PINESCHI requesting the voluntary recusal of Defendants WACHOB, GADDIS and PINESCHI, for a conflict of interest involving those Judges participation in keeping a civil rights case (#**SCV17827**, *Wright v. Placer County, et al.* – same WRIGHT as Plaintiff WRIGHT) from going to trial, along with other improprieties in that and other civil rights cases. At the time the hearing was to take place, the case transferred to Defendant WACHOB's department, who carried out the following improper/prejudicial and unethical acts:

1) refusing to allow Plaintiff NELSON's peremptory challenge under C.C.P.§170 on 9/25/07 (despite NELSON's written request filed with the Court on 9/20/07) asking Defendant WACHOB to remove himself as Judge in MCV28065 at the very beginning of the proceedings, because NELSON didn't' feel a fair and impartial trial could be had as a result of a pending appeal involving Defendant WACHOB and Plaintiff WRIGHT (the other owner of 22235 FH #22) in the California 3rd Appellate District, Case # **C051831**; WACHOB stated to Plaintiff NELSON that her peremptory challenge was too late, despite her 5-day advance written notice and C.C.P§170.

2) refusing to allow Plaintiff NELSON to have her attorney (JAMES LYNCH) present for all the proceedings; Plaintiff NELSON's attorney could not appear because of a conflict in his trial schedule that day in a court over 50 miles away, even though he had NELSON present a Trial Brief he prepared on his behalf on the 1st day of trial (9/25/07). Plaintiff NELSON requested Defendants PC COURT and WACHOB continue the hearing to the next scheduled date the following week (10/1/07, because Defendant PC COURT and WACHOB again attempted to prejudice her case by putting her 2 hearing dates a week apart, to interfere with the continuity of evidence or testimony for the jury), but WACHOB refused, and said since NELSON is present now, the hearing will take place without giving her the benefit of her counsel being present;

3) refusing to allow Plaintiff NELSON the benefit of a court reporter, despite her request for a fee waived court reporter allowed under California Rules of Court 3.61. Defendant PC COURT's regular policy under its Local rule 10.15 is in violation of the U.S. Constitutions, Fourteenth Amendment and applicable Articles , and California Constitution, Article 1, Section 3(b) and Section 7 that provides equal access, treatment and protection under the laws, Section 26 provides that the provisions of the California Constitution are mandatory and prohibitory. She was entitled to a proper record of the proceeding to protect her appellate rights, but was denied this basic right.

4) refusing to allow Plaintiff NELSON accommodations requested by NELSON's physician in a letter to Defendants PC COURT and WACHOB;

5) refusing to allow Plaintiff WRIGHT accommodations to appear by telephone, as he had just found out about the hearing and had not been served any process or notice of any of the proceedings prior to that. Defendants PC COURT, WACHOB, HILLCREST, HILLCREST PARK, CARROLL,

CHRISTENSEN and WILLIAMS all failed to serve any papers regarding MCV28065 on this owner of 22235 FH #22, as required under C.C.§798, et seq.;

, 6) refused to sanction Defendants WILLIAMS and CHRISTENSEN for their failure to appear at a properly-noticed deposition or participate in any discovery, when brought to Defendant WACHOB's attention by Plaintiff NELSON on verbal motion for sanctions on September 24, 2007; NELSON lost over $150 in fees and costs for the court reporter and room, plus 2 hours of her time by these failures to appear (see Deposition Transcripts made a part of the Clerks' Transcripts (Appeal-**MCV28085**);

7) refusing to allow Plaintiff NELSON to enter evidence that was pertinent to the facts and law of the case, and that directly rebutted the statements made by Defendants CHRISTENSEN and CARROLL to Defendants WACHOB. In fact, WACHOB was aware of this evidence and that it contradicted testimony of CHRISTENSEN and CARROLl, as it was already in Defendant PC COURT's file in MCV28065, attached to NELSON's document entitled "NELSON'S TRIAL EXHIBTS" (a document over 150 pages long, filed with the court on or about September 24, 2007). But this evidence was deliberately removed from the Court's file after NELSON filed her appeal, by either Defendant WACHOB to cover up his wrongdoing, or one of his court personnel;

8) refusing to allow Plaintiff NELSON to bring forth witnesses she had already subpoenaed, including Defendant PC SHERIFF's Officers, to refute and rebut statements made by Defendants CARROLL and CHRISTENSEN in connection with Defendants HILLCREST, HILLCRET PARK, CHRISTENSEN and WILLIAMS;

9) Defendant WACHOB then dismissed the entire jury after Defendants HILLCREST, HILLCREST PARK, CHRISTENSEN and CARROLL presented all their evidence, in violation of the U.S. Constitution (Articles and Amendment) and the California Constitution Article 1, Section 16.

10) Defendants PC COURT, WACHOB, HILLCREST, HILLCREST PARK, CHRISTENSEN, CARROLL and WILLIAMS, by the evidence in the file at the time of trial (see NELSON's "Request to Take Judicial Notice" and attached U.S. District Court Complaint, see especially Exhibit "A" to that Complaint, submitted in **MCV28065**), were also aware by that evidence that title to the mobile home at 22235 FH #22 had transferred from LAURA NELSON to Plaintiffs NELSON and WRIGHT, but these Defendants allowed deliberate misrepresentation of this fact in the court records and to the jury anyway;

11) Defendants PC COURT, WACHOB, HILLCREST, HILLCREST PARK, CHRISTENSEN, CARROLL and WILLIAMS deliberately had Plaintiff NELSON gagged by numerous abusive and improper In Limine Motions filed on or about September 24, 2007, from mentioning the transfer of the home from LAURA NELSON to her and Plaintiff WRIGHT, or anything involving Plaintiff WRIGHT, or from presenting the original Certificate of Title to PC COURT, other Defendants or the jury, that NELSON had at trial conveying the mobile home at 22235 FH #22 to her and WRIGHT on August 8, 2007;

12) Defendant WACHOB thereafter made his own verdict (on Motion for Directed Verdict for alleged "lack of evidence" improperly brought to tamper with the jury by Defendants CARROLL, HILLCREST, HILLCREST PARK, CHRISTENSEN and WILLIAMS) that was contrary to law, and that improperly caused Plaintiff NELSON to be removed from a home she had every right to occupy under the Mobile Home Residency Laws, C.C.§798.75(d);