# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF NEW MEXICO

**DIANNE NELSON, individually, and on behalf of: J. EDMOND
BERTHELOT, JR., DECEASED by assignment and powers
granted under that certain notarized Deed of Trust Dated March 2, 2007
and recorded in Homer Recording District 309, Homer, Alaska in
Document 2007-004554-0; and on behalf of the following parties by
assignment under Power of Attorney: RONALD W. WRIGHT
(April 3, 2009); PAMELA WILBUR (July 2, 2008); ED RICHARDSON
(May 11, 2009); SKYLER WILLIAMS (April 2009); and
STEPHEN SCHOENSTEIN,**

      **Plaintiffs,**

**vs.**                                                                                   **No. CIV 09-477 RB/KJM**

**UNITED STATES OF AMERICA; UNITED STATES ATTORNEY
GENERAL; FEDERAL BUREAU OF INVESTIGATION; UNITED
STATES 9TH CIRCUIT APPELLATE COURT; UNITED STATES
DISTRICT COURTS (ALASKA AND CALIFORNIA); STATE
OF ALASKA; ALASKA DEPARTMENT OF PUBLIC SAFETY;
STATE OF CALIFORNIA; ALASKA ATTORNEY GENERAL;
STATE OF CALIFORNIA, OFFICES OF PUBLIC DEFENDER;
CALIFORNIA ATTORNEY GENERAL; CALIFORNIA THIRD
DISTRICT COURT OF APPEALS; STATE OF ALASKA, SUPERIOR
COURT-KENAI; STATE OF ALASKA, DISTRICT COURT-HOMER;
STATE OF CALIFORNIA, SUPERIOR COURTS, PLACER, SACRAMENTO,
RIVERSIDE, and VICTORVILLE; CALIFORNIA MOBILEHOME
OMBUDSMEN; PLACER COUNTY DISTRICT ATTORNEY;
RIVERSIDE COUNTY DISTRICT ATTORNEY; VICTORVILLE
DISTRICT ATTORNEY; ALASKA STATE TROOPERS; ALASKA
COMMISSION ON JUDICIAL CONDUCT; CALIFORNIA FRANCHISE
TAX BOARD; CALIFORNIA HIGHWAY PATROL; STATE OF
CALIFORNIA, COUNTIES OF PLACER and RIVERSIDE;
OFFICE OF PLACER COUNTY COUNSEL; PLACER COUNTY RISK
MANAGEMENT; PLACER COUNTY SHERIFFS DEPARTMENT;
PLACER COUNTY ADULT PROTECTIVE SERVICES; PLACER
COUNTY TAX ASSESSOR; PLACER COUNTY BUILDING
DEPARTMENT; PLACER COUNTY ENVIRONMENTAL HEALTH;
PLACER COUNTY CODE ENFORCEMENT DEPARTMENT;
PLACER COUNTY ANIMAL CONTROL; PLACER COUNTY
PUBLIC WORKS; PLACER COUNTY COMMUNITY DEVELOPMENT
DEPARTMENT; PLACER COUNTY BOARD OF SUPERVISORS;
PLACER COUNTY ASSESSOR; PLACER COUNTY GRAND JURY;**

ROSEVILLE POLICE DEPARTMENT; CHARLES WACHOB;
LARRY D. GADDIS; JOSEPH O'FLAHERTY; ALAN PINESCHI;
MARGARET MURPHY; ANNA MORAN; JENNIFER WELLS;
LISA FULTS; DANIEL WESTERBERG; STEVEN KING;
BRAD FENOCCHIO; THOMAS R. DALY; PETER MYLNARIK;
TED NORDGAARDEN; MATTHEW LEVEQUE; JOHN PASTADOR;
JOHN NOVAK; JUNE STEIN; ANTHONY LABOUFF; GERALD O.
CARDEN; DAVID HUSKEY; VALIERIE FLOOD; JAMIE EDWARDS;
RICHARD CRABTREE; DENNIS KELLER; SHELDON HODGE;
JAMES J. LYNCH; HERB WHITAKER; LEGAL SERVICES OF
NORTHERN CALIFORNIA; JOHN MENDEZ; TERRY DUCHARME;
TERESA RAWSON, ROBERT MARTINE; KEN BROWN; CAROLE
BARBER; MICHAEL MARTIN; GREG MARTIN; BRIAN WIRTZ;
MIKE HARRIS; KATHY WISTED; FRED YEAGER; REX
BLOOMFIELD; RICHARD ARMSTRONG; CHAL DECECCO;
FRANK DOMEIER; ART THOMAS; STEPHEN D'ARCY;
SALLY LOBB; DENNIS MEEH; EDWARD BONNER;
JOHN SWEIKAR; DEVON BELL; DANIAL GRAY; MICHELLE
BURNWORTH; ED THOMPSON; DON MICKEL; PHIL HERMANEK;
DORY LYN ANDERSON; THE PENINSULA CLARION NEWSPAPER;
VELMA BAIER; DARYL BAIER; HILLCREST MOBILE HOME PARK
(aka or formerly known as IDLEWHEELS MOBILE HOME PARK);
STEVEN WILLIAMS, individually, as agent for and dba HILLCREST
PROPERTIES, INC. and HILLCREST PROPERTIES OF
FORESTHILL, INC. (also dba HILLCREST MOBILE HOME PARK);
KELLY CHRISTENSEN; JAMES WOOD and JOSEPH CARROLL,
individually and as Agents or Representatives of HILLCREST PROPERTIES,
INC., HILLCREST PROPERTIES OF FORESTHILL, INC., and HILLCREST
MOBILE HOME PARK; AMANDA BERTHELOT, Individually and
as Personal Representative of the ESTATE OF JOSEPH EDMOND
BERTHELOT, JR., Deceased; ESTATE OF JOSEPH EDMOND
BERTHELOT, JR.; and MIKE TENNISON,

       Defendants.

## MEMORANDUM OPINION AND ORDER
## DISMISSING COMPLAINT

**THIS MATTER** comes before the Court on pro se Plaintiff Dianne Nelson's application

to proceed *in forma pauperis* ("IFP"), filed May 13, 2009, on her request for an emergency hearing

and order seeking restitution of property in Alaska to Plaintiff Stephen Schoenstein and his tenant,

and on the Court's concomitant obligation "to review the affidavit and screen [Nelson's] case under

2

28 U.S.C. §§ 1915(a) and (e)." *Lister v. Dep't Of Treasury*, 408 F.3d 1309, 1311 (10th Cir. 2005).

Screening the case under § 1915(e) includes determining whether "the allegation of poverty is untrue" as well as determining whether the action "is frivolous or malicious, ... fails to state a claim on which relief may be granted; or [] seeks monetary relief against a defendant who is immune from such relief." § 1915(e). "[I]n order to succeed on a motion to proceed IFP, the movant must show a financial inability to pay the required filing fees, as well as the existence of a reasoned, nonfrivolous argument on the law and facts in support of the issues raised in the action." *Lister*, 408 F.3d at 1312.

In screening the complaint, the Court resolves the issue whether the complaint states a claim on which relief may be granted by applying the same standards used in resolving motions to dismiss for failure to state a claim brought under Fed.R.Civ.P. 12(b)(6). *See Kay v. Bemis*, 500 F.3d 1214, 1217 (10th Cir. 2007). This means that the Court must

> look to the specific allegations in the complaint to determine whether they plausibly support a legal claim for relief. Rather than adjudging whether a claim is 'improbable,' factual allegations in a complaint must be enough to raise a right to relief above the speculative level. In addition, [the Court] must construe a pro se [] complaint liberally.

*Id.* at 1218 (internal quotation marks, original brackets, and citations omitted).

> This requirement of plausibility serves not only to weed out claims that do not (in the absence of additional allegations) have a reasonable prospect of success, but also to inform the defendants of the actual grounds of the claim against them. "Without some factual allegation in the complaint, it is hard to see how a claimant could satisfy the requirement of providing not only 'fair notice' of the nature of the claim, but also 'grounds' on which the claim rests." [*Bell Atl. Corp. v. Twombly*, 127 S. Ct.] at 1965 n. 3. *See Airborne Beepers & Video*, *Inc. v. AT & T Mobility L.L.C.*, 499 F.3d 663, 667 (7th Cir. 2007) ("[A]t some point the factual detail in a complaint may be so sketchy that the complaint does not provide the type of notice of the claim to which the defendant is entitled under Rule 8."). The *Twombly* Court was particularly critical of complaints that "mentioned no specific time, place, or person involved in the alleged conspiracies." 127 S. Ct. at 1971 n. 10. Given such a complaint, "a defendant seeking to respond to plaintiffs' conclusory allegations ... would have

little idea where to begin." *Id.*

*Robbins v. Oklahoma*, 519 F.3d 1242, 1248 (10th Cir. 2008).

> Complaints in § 1983 actions subject to qualified-or-absolute immunity defenses must allege facts sufficient to show (assuming they are true) that the defendants plausibly violated the [plaintiff's] constitutional rights, and that those rights were clearly established at the time. This requires enough allegations to give the defendants notice of the theory under which their claim is made.
>
> * * * *
>
> [C]omplaints in § 1983 cases against individual government actors pose a greater likelihood of failures in notice and plausibility because they typically include complex claims against multiple defendants. The *Twombly* standard may have greater bite in such contexts, appropriately reflecting the special interest in resolving the affirmative defense of qualified immunity at the earliest possible stage of a litigation. Without allegations sufficient to make clear the "grounds" on which the plaintiff is entitled to relief, *Twombly*, 127 S. Ct. at 1965 n. 3, it would be impossible for the court to perform its function of determining, at an early stage in the litigation, whether the asserted claim is clearly established.

*Id.* at 1249 (internal quotation marks and citations omitted). Thus, "conclusory allegations without supporting factual averments are insufficient to state a claim on which relief can be based," even in a complaint prepared by a pro se plaintiff. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

A complaint may be dismissed as frivolous under § 1915(e)(2) if it is premised on a nonexistent legal interest or delusional factual scenario – situations in which the claims are "so defective that they should never have been brought at the outset." *Neitzke v. Williams*, 490 U.S. 319, 329-30 (1989). "A complaint, containing as it does both factual allegations and legal conclusions, is frivolous where it lacks an arguable basis either in law or in fact." *Id.* at 325. Frivolous claims that may be dismissed *sua sponte* are ones "based on an indisputably meritless legal theory, ... [or] whose factual contentions are clearly baseless. Examples of the former class are claims against which it is clear that the defendants are immune from suit ... and claims of infringement of a legal interest which clearly does not exist." *Id.* at 327. Section 1915(e)(2) "rationally advances the legitimate goal of removing meritless cases from the federal dockets by allowing the courts to

4

review *sua sponte* claims that are particularly likely to lack merit, since indigent litigants have less financial incentive than do paying litigants to screen their potential claims." *Curley v. Perry*, 246 F.3d 1278, 1285 (10th Cir. 2001).  But "a court should allow a [pro se] plaintiff an opportunity to cure technical errors or otherwise amend the complaint when doing so would yield a meritorious claim." *Id.* at 1284.

The Court has carefully reviewed the application and the Complaint.  The Court first notes that Nelson has not alleged facts showing that she is indigent–she reports an income of $1132/month and  housing costs of only $375/month, with an additional $50/month being paid toward medical bills.  She shows no other bills, indebtedness, or dependents.  *See* Doc. 2 at 2-3.

More importantly, however, as discussed below, the Court also notes that Nelson has not stated facts that give rise to a cognizable federal question; that she may not attempt to represent Plaintiffs other than herself or bring claims that are not personal to her; that most of her claims involve disagreements with legal rulings in state-court cases that have already been finally decided and are, therefore, barred under the *Rooker-Feldman* doctrine; and that she has named individuals and entities that have absolute or sovereign immunity.  Her federal claims must be dismissed as frivolous, therefore, and the Court will dismiss the Complaint in its entirety.

**I.  Nelson may not bring claims on behalf of other Plaintiffs.**

Nelson attempts to represent her deceased fiancé–based on the fact that she has a Deed of Trust on a home that he owned–and four other Plaintiffs in this case.  Her motion for an emergency restraining order requests that the Court give possession of real property in Alaska to Plaintiff Schoenstein and his tenant.  Despite Schoenstein's (and the other living Plaintiffs) apparent permission to allow Nelson to represent them, courts have long ruled that persons acting pro se may only represent themselves.  *See Finstuen v. Crutcher*, 496 F.3d 1139, 1143 (10th Cir. 2007) (noting

that, to establish standing to bring a claim for relief, the "complainant must allege an injury *to himself* that is distinct and palpable) (internal quotation marks omitted) (italics added); *Fymbo v. State Farm Fire & Cas. Co.*, 213 F.3d 1320, 1321 (10th Cir. 2000) ("A litigant may bring his own claims to federal court without counsel, but not the claims of others."); *Meeker v. Kercher*, 782 F.2d 153, 154 (10th Cir. 1986) (per curiam) ("We hold that under Fed. R. Civ. P. 17(c) and 28 U.S.C. § 1654, a minor child cannot bring suit through a parent acting as next friend if the parent is not represented by an attorney.").  Because Nelson is not an attorney, she cannot bring anyone else's claims to court, and all of the claims involving the other Plaintiffs will be dismissed without prejudice.  The claims that must be dismissed include all of the claims arising out of Nelson's mother's and other Plaintiffs' mobile-home space rental agreements or other disputes in California. *See* Doc. 1 at 17-19.  It also includes her requests for emergency injunctive relief regarding Schoenstein and his tenant.

## II.  Nelson has not stated sufficient facts giving rise to federal jurisdiction in this case.

### A.  Allegations in the Complaint.

Nelson's Complaint purports to seek redress under 42 U.S.C. § 1981 et seq. for several unrelated claims in two states.  *See* Doc. 1 at 1.  Her controversies involve "rights to real and personal property" in Alaska and California.  *See Id.* at 2.  Nelson states that she is a resident of Alaska, and because many of the Defendants are also Alaskan residents, there is not complete diversity of parties.  *See Id.* at 2.  For purposes of determining whether the Court has subject-matter jurisdiction based on a federal question or on Nelson having named the United States as a Defendant, the Court accepts as true the allegations in Nelson's Complaint.

The Court, having examined, at great length, the numerous related and unrelated claims of Nelson, will describe her claims in detail as follows.  Nelson was living in Alaska with a married

man, J. Edmond Berthelot, Jr., while he was attempting to get a divorce from Defendant Amanda Berthelot. *See Id.* at 9. Edmond and Amanda disagreed whether the home he owned before he was married to Amanda, and in which Nelson and Edmond resided, was community property in the divorce proceedings. *See Id.* at 7. Nelson contends that she loaned money to Edmond–which he had promised to pay to Amanda so that she would execute dissolution documents– in exchange for Edmond giving Nelson a deed of trust on his home. *See Id.* at 6-8. Edmond died before the divorce became final, however, *see Id.* at 9-10, and the state court dismissed the divorce proceeding. *See Id.* Although she was not a party to the divorce proceedings, Nelson contends that the dismissal of the divorce proceedings by unspecified Defendants "caused her to suffer extreme financial hardship, damages, injuries and abusive civil rights violations as a direct and proximate result of their neglect to act," *Id.* at 10, apparently because Edmond did not establish his right to his home as his sole property before he died.

Nelson alleges that Defendants the state of Alaska, Alaska State Troopers Mylnarik, Nordgaarden, Leveque, and Alaska Department of Public Service Counsel Novak refused to investigate Edmond's death or to have an autopsy performed. *See Id.* at 10, 42. She alleges that unspecified Defendants refused to allow her to view Edmond's body at the mortuary and that Amanda, who was still married to Edmond at the time of his death and whom the probate court appointed as Edmond's personal representative, had Edmond cremated before Nelson knew that no autopsy had been performed. *See Id.* at 10.

Nelson alleges that Defendant attorney Daniel Westerberg harmed her by failing to tell her he had a conflict of interest when she contacted him regarding potential representation for Nelson to foreclose on Edmond's house. *See Id.* Nelson obtained permission from Edmond's son to stay in Edmond's home after Edmond's death, but Defendant Mike Tennison, Amanda's stepfather,

changed the locks on the house at Westerberg's and Amanda's instruction while Nelson was out of town. *See Id.* at 11.  Nelson complains that Defendants Margaret Murphy, the Alaska District Court in Homer, Westerberg, the Berthelot Estate, Amanda, and Tennison "prejudicially participated in refusing to extend" a temporary restraining order that Nelson obtained against Tennison. *Id.*  She alleges that the state of Alaska and the Alaska State Troopers refused to take her criminal report regarding Tennison changing the locks on Edmond's house or to properly investigate Edmond's death, and that the Alaska Attorney General and Kenai District Attorney "failed to take adequate steps to see that Plaintiffs rights were protected and thereby participated in the conspiracy to deprive [her] of real property rights." *Id.*

Nelson states that she served Amanda, Westerberg, the Estate, and Tennison with Notices of Default and Intention to Sell Edmond's home for their failure to make the payments Edmond owed to her under the Deed of Trust. *See Id.* at 11-12.  In response, the Estate and Amanda filed a "Forcible Entry and Detainer Action" to settle the issue of ownership and remove Nelson from the home. *See Id.*  at 12.  After a hearing, on April 28, 2008, Amanda and the Berthelot Estate, through attorney Westerberg, "obtained an Order and Writ of Execution to evict Nelson" from Edmond's home. *Id.* at 10.  Nelson contended at the hearing that the district court did not have jurisdiction and that the title to the home was in contention, but lost on both points. *See Id.*  Nelson states that she subsequently suffered heart problems, and contends that these Defendants violated the ADA by refusing to give her more than three days to move from the house. *See Id.*  She contends that the state-court's refusal to reconsider its order violated state law because it deprived her of "valuable contractual rights in her Note and Deed of Trust against that property." *Id.* at 13.  Nelson complains that the Alaska Superior Court-Kenai refused to grant her request for emergency injunctive relief and that it improperly referred her complaints to the proceedings already being held in Homer. *See*

8

*Id.*

Nelson filed a "creditor's" suit against the Berthelot Estate in Alaska Superior Court-Kenai for damages arising from the Note and Deed of Trust, and she filed a second suit for medical expenses and emotional and mental distress caused by the allegedly "improper acts of Defendants Alaska Superior Court-Kenai, Alaska District Court-Kenai, Moran, Murphy, Wells, Westerberg, Berthelot, Berthelot Estate, and Tennison." *Id.* at 13-14. The federal Complaint does not state the result of these proceedings, but they apparently were unsuccessful.

Nelson contends that she held a foreclosure sale on Edmond's home and Plaintiff Richardson purchased it, but that the Alaska Superior Court-Kenai had earlier issued an order staying the sale without her knowledge. *See Id.* at 14. Richardson filed a suit in the United States District Court for the District of Alaska in an attempt to get possession of the home, but the court dismissed it. *See Id.* Richardson then apparently "sold" his alleged "ownership interest" in Edmond's home to Plaintiff Schoenstein by Quitclaim Deed in 2009, and Schoenstein "verbally rented" the house to a tenant. *Id.* But the Estate obtained an order terminating Nelson's rights to the house in the proceedings held in the Alaska Superior Court-Kenai and the Alaska State Troopers executed the court's Writ of Assistance that ejected Schoenstein's tenant from the property. *See Id.* at 15. The state court denied Nelson's request for a stay and her arguments that the writ of assistance was fraudulently obtained "through abuses of the judicial process." *Id.*

Nelson has combined several, totally unrelated claims in this lawsuit. On pages 17-19 she references events occurring in 2005-2007 involving her mother's attempted sale of a mobile home in California, her mother's disagreements with the mobile-home park and dissatisfaction with free legal services, and Placer County's Adult Protective Services' refusal to get involved with her mother's dispute with the mobile home park. *See Id.* at 17-19. But Nelson's mother is not a

Plaintiff in this case.  Nelson also complains of violation of Nelson's guests' constitutional rights because they apparently felt compelled to leave another space at the mobile-home park where Nelson temporarily resided under threat of arrest.  *See Id.* at 18.  Nelson attempts to bring claims on behalf of Plaintiff Ronald Wright regarding his separate interests in a mobile home also located at the same park.  *See Id.* at 19.

In regard to her own claims associated with the mobile home her mother had owned, Nelson states that she obtained the mobile home from her mother by "voluntary repossession" and a "power of attorney" to live there, and that she and Plaintiff Wright became "Registered Owners" of the mobile home.  *Id.* at 19-21.  Nelson participated in a state-court hearing in September 2007 in which Defendants Hillcrest, Hillcrest Park, Carroll, Christenson, and Williams attempted to get an order of forcible entry and detainer against her.  *See Id.* at 19, 21-23.  Nelson complains of several procedural and evidentiary rulings; states that she submitted 150 pages of exhibits at the hearings; and complains that the exhibits were improperly removed after she filed her appeal.  *See Id.* at 22-25.  The state court granted the request to remove Nelson from the mobile home because a jury found that Nelson and Wright "did not own the mobile home."  *Id.* at 26; *see Id.* at 23.  Despite the jury's conclusion, Nelson sues the Placer County Assessor and G. Martin for refusing to acknowledge the  transfer of title regarding the mobile home.  *See Id.* at 29.

Nelson sues her California counsel, Defendant James Lynch, for his failure to raise objections and request a mistrial and for signing the state-court's Order before consulting her.  *See Id.* at 24-25.  While she appealed that case, Defendants Christensen, Williams, Carroll, Hillcrest, Hillcrest Park and Mickel caused the mobile home that Nelson claimed a property interest in to be sold at a "Wharehouseman's Lien" sale in November 2007.  *Id.* at 27.  Nelson was given notice of the sale but contends that the sale violated her rights under the California Mobile Home Residency

10

Laws. *See Id.* These Defendants also allowed Nelson's personal belongings to be removed in December 2007 after the sale, "without ... proper legal authority." *Id.* Defendants Carroll and Williams thereafter sold the mobile home to Defendant Thompson in January 2008. *See Id.* According to Nelson, the California Department of Housing and Community Development rejected the transfer and Nelson contends that she is still a part owner of the mobile home.

Nelson complains that Defendants Placer County Sheriff, the Placer County District Attorney, LaBouff, Thomas, D'Arcy, Carden, Mendez, Placer County Counsel, the California Attorney General, the California Department of Housing and Community Development, the FBI, and the United States Attorney General refused to speak with her about her disagreements over the mobile-home ownership, thereby failing to take action she requested "in connection with her loss of use of the mobile home," and refused to criminally prosecute the parties involved in the litigation with her. *Id.* at 27-28.

In another, unrelated cause of action, Nelson complains that the Placer County Court, and Defendant Judges Gaddis, Wachob, and Pineschi erroneously ruled against her and prevented the "timely adjudication" of her suit in March 2007 in a case in which she attempted to "regain[] possession" of yet another property in Placer County, California, from Defendants Gray and Burnworth, who were represented by Defendant King. *See Id.* at 24-25, 31-32. She seeks to sue the Placer County District Attorneys Office and its supervising attorney, Defendant Fenocchio, for refusing to prosecute Gray for writing bad checks to Nelson for rent. *See Id.* at 28. She sues Defendant Judge O'Flaherty for not taking "steps ... to see that Nelson got any restitution [from Gray] or that Gray was punished for his wilful violation of O'Flaherty's ... orders." *Id.* And she sues other judges for what she perceived as wrongful behavior on their part during the trial and in other proceedings. *See Id.* at 25, 31-32. Nelson complains that the Placer County Court and

11

defendant-Judges Wachob and Gaddis similarly entered erroneous rulings against her in a second detainer and damages action she brought against Defendants Gray and Burnworth in August 2007. *See Id.* at 32-33.

Nelson apparently tried to bring suit in federal district court in California regarding her claims and now attempts to sue the United States District Court in California because it "held up the issuance of their summons for over 3 months, and then denied their valid fee waivers, in an attempt to extinguish their claims." *Id.* at 28.

Nelson seeks to sue the Placer County Superior Court for "interfer[ing]" with her litigation by not allowing her to fax file and by "tampering" with her courier, causing her to call the court before "they would accept her documents." *Id.* at 29.  She also complains that the court failed to follow its local rules by setting hearings involving an out-of-state party on less than ten days notice. *Id.*

Nelson next spends several paragraphs discussing unrelated events that occurred in 1999-2000 in Placer County, California.  *See Id.* at 29-30.  These allegations are against Defendants Harris, Martin, Flood, Edwards, Keller, Crabtree, Harris, Yeager, Bloomfield, Martino, Barber, Wisted, Armstrong, Domeier, Thomas, D'Arcy, Fenocchio, Bonner, Wirtz, Brown, DeCeccho, Bell, District Attorney LaBouff, Huskey, Sweikar, Sheriff's Officer Meeh, Domeier, Placer County and its CE Department, Sheriff's Department, Animal Control, County Counsel, Public Works, Building Department, Environmental Health Department, and Risk Management Departments.  She claims damages because a Code Enforcement file regarding her property was not closed to her satisfaction. *See Id.* at 29-31, 40-41.

Nelson next attempts to bring claims on behalf of Plaintiff Pamela Wilbur, alleging that Wilbur was denied adequate due process in two unrelated state-court cases that the Placer County

Code Enforcement Department brought against Wilbur.  *See Id.* at 40.   She then contends that Plaintiff Skyler Williams was harassed by the issuance of a warrant, jailed for 30 days, and inadequately represented by the Placer County Public Defenders.  *Id.* at 41, 45.

Nelson complains, in yet another unrelated claim, that the Riverside Superior Court and the Riverside District Attorney damaged her by failing to notify her of a hearing in a criminal case in which she was the victim and by allowing the perpetrator to enter into a plea bargain that did not include restitution.  *Id.*

In paragraph 35 of her Complaint, Nelson contends that the failure of certain officers, district attorneys, and county employees damaged her by refusing to take reports of criminal activity, and that they neglected their duties to prevent unspecified damages and injury to her, failed to protect her from harassment, and prevented her from obtaining government redress of her grievances.  *Id.* at 42.  She contends that the failures violate 42 U.S.C. § 1985.  *See Id.*

Paragraph 36 of the Complaint alleges state-law legal malpractice by Defendant Lynch (who was Nelson's counsel in California), and Defendant Hough (who was Nelson's counsel in Alaska), and she also alleges judicial misconduct by every judge who presided over every case in which Nelson was a party.  *See Id.* at 43-46.  She also alleges wrongful acts by counsel for opposing parties, and by attorneys who worked for Placer County.  *Id.* at 44.  Nelson seeks to sue Alaska District Attorney Stein for failing to investigate and prosecute whoever vandalized Nelson's car. *Id.* at 45.

Nelson requests (i) "immediate injunctive and/or declaratory relief to recognize Plaintiff Schoenstein's possessory and ownership rights in the [Alaska] property"; (ii) "immediate injunctive and/or declaratory relief to recognize [Nelson's] possessory and ownership rights in [the mobile home in Placer County, California]" and restitution for personal property she lost there; (iii) actual

and punitive damages with interest; (iv) and "immediate investigation into the allegations of judicial misconduct and legal malpractice." *Id.* at 47.

### B.  Analysis.

Several things are immediately clear upon reading Nelson's omnibus Complaint.[1]  The first is that Nelson has not stated facts that give rise to a cause of action under §§ 1981 or 1985.  Both statutes provide a remedy for racial discrimination, *see Bolden v. City of Topeka, Kan.*, 441 F.3d 1129, 1136 (10th Cir. 2006) (noting that the United States Supreme Court has held that "Section 1981 prohibited intentional racial discrimination in private, as well as public, contracting"); *Kush v. Rutledge*, 460 U.S. 719, 725-26 (1983) (noting that, except for the first clause of § 1985(2), which prohibits interference with federal judicial proceedings, Congress imposed a requirement of class-based animus on persons seeking to prove a violation of their rights under § 1985), and Nelson has not alleged any facts indicating that she was discriminated against on the basis of her class or race or that the Defendants conspired to interfere with federal judicial proceedings.

And although Nelson asserts in a conclusory fashion that she has been denied "due process," which, with sufficient supporting facts, could potentially form the basis of a claim under 42 U.S.C. § 1983 against state actors who are not immune from suit, her Complaint conclusively demonstrates that Nelson has received notice, hearings, and full-blown trials regarding the actions that she

---

[1]  Nelson has violated the rules by combining plaintiffs and defendants in unrelated actions in a single complaint.  Under Fed.R.Civ.P. 20(a)(1), plaintiffs may join in one action only if they assert a "right to relief jointly, severally, ... [or] with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and there is a "question of law or fact common to all plaintiffs."  Similarly, a plaintiff may join several defendants in one action only if she asserts a right to relief against the defendants jointly or severally or the right to relief against all of the defendants arises "out of the same transaction or occurrence." Nelson's attempt to incorporate separate and unrelated claims of various plaintiffs and against various defendants for acts occurring in two states is inappropriate.

14

complains were wrongful.  Thus, Nelson has received due process as a matter of law but simply disagrees with the results of that process.  "[A] quarrel with the result of a proceeding does not state a claim that due process was not afforded.  Stated differently, procedural due process does not guarantee a particular result."  *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1289, 1295 (11th Cir. 2005).  Simply stated, the legal battles over whether Nelson owned a legal interest in Edmond's home, whether she properly foreclosed on it or had a legal interest to transfer to another person, and whether she (and, therefore any of her successors-in-interest) had a legal or possessory right to the home have been fought and lost in the Alaska state courts, and her remedy was appellate review in the Alaska state appellate courts.  Similarly, her legal battles over title to mobile homes, rights to rental spaces, and rights to eject tenants or to receive rents from them have likewise been fought and lost in the California state courts, and her remedies lie in proper appellate review.

"A plaintiff properly invokes [federal question]  jurisdiction when she pleads a colorable claim 'arising under' the Constitution or laws of the United States."  *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006).  But "[a] claim invoking federal-question jurisdiction ... may be dismissed for want of subject-matter jurisdiction if it is not colorable, *i.e.*, if it is immaterial and made solely for the purpose of obtaining jurisdiction or is wholly insubstantial and frivolous."  *Id.* n.10 (internal quotation marks omitted).   Nelson has failed to state any facts on the face of her Complaint that present a colorable federal question that would give rise to this Court's subject-matter jurisdiction.  Besides the fact that Nelson has not sufficiently stated facts to show a violation of a constitutional right or federal statute, she seeks to sue state entities and their employees or agents in their official capacities that are not subject to suit under § 1983, against judges who are absolutely immune from suit, and against private individuals who also are not subject to suit under § 1983 because they are not state actors. *See  Will v. Michigan Dep't. of State Police*, 491 U.S. 58, 70-71 (1989) (holding that

15

§ 1983 "does not provide a federal forum for litigants who seek a remedy against a State for alleged deprivations of civil liberties"); *Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978) ("judges of courts of superior or general jurisdiction are not liable to civil actions for their judicial acts, even when such acts are in excess of their jurisdiction, and are alleged to have been done maliciously or corruptly"); *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50 (1999) (noting that private conduct, "no matter how ... wrongful," may not be redressed by a § 1983 claim) (internal quotation marks omitted).

Although Nelson briefly cites the fact that she named the United States as a Defendant in her jurisdictional statement, no allegations in her Complaint support any claim against any federal Defendant. The United States, its agencies, and its courts have sovereign immunity and Nelson's Complaint states no facts to support a waiver of immunity, and Nelson states absolutely no facts to support an inference of the Attorney General's involvement in this case. *See Roberts v. Hartz*, No. 03-2054, 113 Fed. Appx. 306, 314, 2004 WL 1941310, **6 (10th Cir. Sept. 1, 2004) (affirming dismissal of suit against FBI and its agent for failure to investigate because the United States' sovereign immunity barred the claim and the court therefore lacked subject-matter jurisdiction over it); *Trackwell v. United States Gov't*, 472 F.3d 1242, 1244 (10th Cir. 2007) (affirming district court's dismissal, for lack of subject-matter jurisdiction, of suit against United States and Supreme Court because the plaintiff had pointed to no applicable statute waiving the United States' sovereign immunity, and noting that sovereign immunity extends to the federal courts). Naming the United States, its courts, and its agencies and officers as Defendants was unwarranted and frivolous.

**III.   If Nelson had stated federal claims, they would be barred by the *Rooker-Feldman* doctrine.**

Nelson plainly seeks to overturn the results of the numerous state-court proceedings in

16

Alaska and California in which she was a losing party, and to obtain the opposite result, by bringing this action that alleges violation of constitutional rights in only a conclusory fashion.

The *Rooker-Feldman* doctrine prevents federal district courts from assuming jurisdiction over "cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005); *Guttman v. Khalsa*, 446 F. 3d 1027, 1032 & n.2 (10th Cir. 2006) (noting that the *Rooker-Feldman* doctrine applies only to "suits filed after state proceedings are final" and setting out what events may indicate such finality: "(1) when the highest state court in which review is available has affirmed the judgment below and nothing is left to be resolved; (2) if the state action has reached a point where neither party seeks further action; or (3) if the state court proceedings have finally resolved all the federal questions in the litigation, but state law or purely factual questions remain to be litigated") (internal quotation marks omitted).  Based on her allegations, Nelson has either exhausted the state appeals processes in Alaska and California or has abandoned her efforts to obtain appellate review.

Even when the plaintiff does not request that the federal court overturn the state-court judgments, federal courts do not have subject-matter jurisdiction over § 1983 claims that effectively seek appellate review of the state-court rulings.  *See Roman-Nose v. N.M. Dep't of Human Servs.*, 967 F.2d 435, 437 (10th Cir. 1992) (holding that dismissal of federal suit seeking damages in regard to state-court judgment terminating parental rights was proper "to the extent that Plaintiff's allegations can be construed as seeking redress for constitutional infirmities in the [state-court] proceeding under 42 U.S.C. § 1983"); *Bolden*, 441 F.3d at 1145 (noting that if a plaintiff brings a federal suit "seeking to invalidate the state-court judgment on the ground that the state-court

proceedings deprived him of due process or that the judgment was otherwise contrary to federal law, his suit would be barred by *Rooker-Feldman*").  Plaintiffs are generally barred "from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Johnson v. De Grandy*, 512 U.S. 997, 1005-06 (1994).

Thus, the *Rooker-Feldman* doctrine bars consideration of even constitutional claims that are "inextricably intertwined" with the state-court judgment because the district court, "in essence, is being called upon to review the state-court decision." *D. C. Court of Appeals v. Feldman,* 460 U.S. 462, 483 n. 16 (1983).  A "federal claim is inextricably intertwined with the state-court judgment if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it.  Where federal relief can only be predicated upon a conviction that the state court was wrong, it is difficult to conceive the federal proceeding as, in substance, anything other than a prohibited appeal of the state-court judgment." *Pennzoil Co. v. Texaco Inc*., 481 U.S. 1, 25 (1987) (Marshall, J., concurring).  Because none of Nelson's federal claims–if there were any–could succeed absent a holding that the state-court rulings were wrong, they are barred by the *Rooker-Feldman* doctrine. Instead, review of the state-court judgments and the underlying rulings must proceed to the state's highest court and then to the United States Supreme Court pursuant to 28 U.S.C. § 1257.  In this case, as discussed above, Nelson could seek review of the state-court proceedings regarding Edmond's estate, the title to his property, and her rights in the Deed of Trust or to possession only in the Alaska state courts of appeal and then to the United States Supreme Court, and could seek review of the proceedings in California only in the California state courts of appeal and the United States Supreme Court.

**IV.  The Court cannot take supplemental jurisdiction over potential state-law claims**.

"Federal courts are courts of limited jurisdiction.  They possess only that power authorized by Constitution and statute, which is not to be expanded by judicial decree." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citations omitted).  If a district court has original subject-matter jurisdiction over a federal claim, then it may take supplemental jurisdiction over related state-law claims.  *See* 28 U.S.C. § 1367(a) ("Except as [otherwise] provided ... in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution").  But "when a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Arbaugh*, 500 U.S. at 513; *see Xie v. Univ. of Utah*, Nos. 06-4087, 06-4098, 243 Fed. Appx. 367, 372, 2007 WL 1936017 **4 (10th Cir. 2007) (quoting *Arbaugh* and noting that, "when a court grants a motion to dismiss for failure to state a federal claim, the court generally retains discretion to exercise supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over pendent state-law claims").

Because the Court has concluded that Nelson's attempted invocation of federal jurisdiction, either by citing the civil-rights discrimination statutes with no supporting factual statements, and/or by naming the United States, the U.S. Attorney General, the FBI, and the circuit and federal courts as Defendants with no supporting facts or legal authority for doing so, was wholly insubstantial and frivolous, the Court must dismiss the complaint in its entirety.  And because Nelson's claims are also barred by the *Rooker-Feldman* doctrine, the Court will not give her an opportunity to amend her Complaint.

**WHEREFORE,**

**IT IS ORDERED** that Nelson's motion to proceed IFP is **DENIED**.

19

**IT IS FURTHER ORDERED** that her request for an emergency hearing for injunctive relief is **DENIED**.

**IT IS FURTHER ORDERED** that Nelson's Complaint is **DISMISSED WITHOUT PREJUDICE** in its entirety for lack of subject-matter jurisdiction.


_____
**ROBERT C. BRACK**
**UNITED STATES DISTRICT JUDGE**